IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMANDA MAHNKE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 1:10-cv-00021-BAH** |
| **WASHINGTON METROPOLITAN AREA** | : | |
| **TRANSIT AUTHORITY,** | : | |
| | : | |
| **Defendant.** | : | |

## DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S OMNIBUS MOTION IN LIMINE

Defendant Washington Metropolitan Area Transit Authority ("WMATA"), by and through counsel, respectfully moves this Court in limine to enter an Order as follows:

1.      Prohibiting and excluding the findings and opinions of Detective Michael Miller works for the Major Crash Investigation Unit, Traffic Safety & Special Enforcement Branch, Metropolitan Police Department at the trial of this case;

2.      Prohibiting and excluding any comment and/or argument that the WMATA bus operator underlined the intersection of Florida Avenue, N.W. and Connecticut Avenue, N.W. on a red traffic signal at the trial of this case;

3.      Prohibiting and excluding any evidence, comment and/or argument on the driving record of the WMATA bus operator;

4.      Prohibiting and excluding any evidence, comment and/or argument that WMATA bus operators' Standard Operating Procedures establish the standard of care governing the issue of negligence in this case;

5.      Prohibiting and excluding any evidence, comment and/or argument on any internal WMATA disciplinary proceedings and/or labor union-WMATA (arbitration) proceedings;

6.      Prohibiting and excluding any evidence, comment and/or argument on any internal WMATA safety investigations, conclusions and recommendations; and

7.      Prohibiting and excluding any evidence, comment and/or argument on any "worst case scenario" future care needs and costs.

In support hereof, Defendant WMATA respectfully directs this Court's attention to the Memorandum of Points and Authorities filed herewith.

> **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**
>
> /s/ Kathleen A. Carey
> Kathleen A. Carey #357990
> Associate General Counsel
> 600 Fifth Street, N.W.
> Washington, D.C.   20001
> (202) 962-1496
> (202) 962-2550
> kcarey@wmata.com
>
> /s/   Nicholas S. Nunzio, Jr.
> Nicholas S. Nunzio, Jr. #362578
> Associate General Counsel - WMATA
> 600 Fifth Street, N.W.
> Washington, D.C.   20001
> Telephone:   (202) 962-1028
> Facsimile: (202) 962-2550
> nnunzio@wmata.com

## LCvR 7(m) CERTIFICATION

**I HEREBY CERTIFY** that on October 5, 2011 I discussed with Plaintiff's counsel by telephone the relief requested in this motion.   Plaintiff's counsel does not consent to this motion.

/ s/ Nicholas S. Nunzio, Jr.
Nicholas S. Nunzio, Jr. #362578
Associate General Counsel - WMATA
600 Fifth Street, N.W.
Washington, D.C.   20001
Telephone:   (202) 962-1028
Facsimile: (202) 962-2550
nnunzio@wmata.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of October, 2011, a copy of **Defendant Washington Metropolitan Area Transit Authority's Omnibus Motion In Limine, together with the Memorandum of Points and Authorities in support thereof, and Order**, was served through the Court's e-filing system on:

Patrick M. Regan, Esquire
Paul Cornoni, Esquire
1919 M Street, NW, Suite 350
Washington, DC   20036

/ s/ Nicholas S. Nunzio, Jr.
Nicholas S. Nunzio, Jr. #362578
Associate General Counsel - WMATA
600 Fifth Street, N.W.
Washington, D.C.   20001
Telephone:   (202) 962-1028
Facsimile: (202) 962-2550
nnunzio@wmata.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMANDA MAHNKE,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | :   **Case No. 1:10-cv-00021-BAH** |
| **WASHINGTON METROPOLITAN AREA** | : |
| **TRANSIT AUTHORITY,** | : |
| | : |
| **Defendant.** | : |

### DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OMNIBUS MOTION IN LIMINE

Defendant Washington Metropolitan Area Transit Authority ("WMATA"), by and through counsel, submits the following Memorandum of Points and Authorities in support of its Omnibus Motion In Limine:

**1.**     **The findings and opinions of Detective Michael Miller, Major Crash Investigation Unit, Traffic Safety & Special Enforcement Branch, Metropolitan Police Department should be prohibited and excluded at the trial of this case.**

Detective Michael Miller works for the Major Crash Investigation Unit, Traffic Safety & Special Enforcement Branch, Metropolitan Police Department.   He investigates and reconstructs accidents for the Metropolitan Police Department.

Detective Miller investigated the bus-pedestrian collision that occurred on September 3, 2009 at the intersection of Connecticut Avenue, N.W. and Florida Avenue N.W., Washington, D.C. involving the pedestrian-Plaintiff Amanda Mahnke and a WMATA bus operated by Carla Proctor.   As a result of his criminal investigation, Detective Miller issued a report containing his findings and opinions regarding the circumstances of the accident.   (**EXHIBIT 1-Report Only**). The report is dated February 24, 2010.   In that the matter was considered by the United States Attorney's office for further criminal prosecution and possible grand jury indictment, Detective Miller's investigative file, including his report, was not released to the parties in this case until

April 2011, when the United States Attorney's office opted not to prosecute the WMATA bus operator.

Although not in possession of any report setting forth the detective's finding and opinions, on July 16, 2010, Plaintiff, nevertheless, identified Detective Miller as a "non-retained" expert witness, pursuant to Fed. R. Civ. P. 26(a)(2)(A).   At the time of Plaintiff's designation, Fed R. Civ. P. 26(a)(2)(C) was not in effect.   As of December 1, 2010, unless otherwise stipulated or ordered by the court, if an expert is not required to provide a written report, a party must provide a disclosure that states:   (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and  (ii) a summary of the facts and opinions to which the witness is expected to testify.   Fed. R. Civ. P. 26(a)(2)(C).   After the close of discovery in this case, Plaintiff neither requested leave to nor filed a supplemental Rule 26(a)(2)(C) expert witness disclosure incident to the release of Detective Miller's report that formally notified Defendant WMATA that Plaintiff was actually calling Detective Miller as an expert witness regarding his criminal investigation report. See Fed. R. Civ. P. 16(b)(4) ("good cause" is required); St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc. 2007 U.S. Dist. LEXIS 39606 (D.D.C. June 1, 2007),    Detective Miller, therefore, was not deposed.

At the same time, on July 16, 2010, in addition to Detective Miller, Plaintiff identified another accident reconstructionist, David Stopper, as a "retained" expert witness, pursuant to Fed. R. Civ. P. 26(a)(1)(A) and (B).   Plaintiff filed Mr. Stopper's Rule 26(a)(2)(B) accident reconstruction report.   Mr. Stopper supplemented his report on February 8, 2011.   Mr. Stopper was, therefore, deposed on July 8, 2011.

In the Joint Pretrial Statement, Plaintiff has listed both Detective Miller and Mr. Stopper as expert witnesses who will testify regarding their reconstruction of the accident.   Furthermore,

Plaintiff describes Mr. Stopper's anticipated courtroom testimony as incorporating the findings and opinions of Detective Miller.

To have <u>two</u> accident reconstructionists testify for the Plaintiff is cumulative, redundant and prejudicial to the Defendant.   Furthermore, in the event that these two accident reconstructionists testify differently on the same issue regarding the circumstances of the accident, their differing testimonies may confuse the jury.   Defendant requests that the Plaintiff be required to use Mr. Stopper at trial, and exclude the opinions of Detective Miller.   Defendant WMATA relied on Plaintiff's designation of Mr. Stopper as her formally retained expert accident reconstructionist, who produced two written expert reports before Detective Miller's report was even released.   Mr. Stopper was deposed based on Plaintiff's Rule 26(a)(2)(B) designation.

Detective Miller investigated this accident and developed his report for consideration by the United States Attorney's office for the purpose of possible criminal prosecution of the bus operator.   Therefore, while useful to the United States Attorney's office for consideration in the initial stages of a criminal prosecution and possible grand jury presentation, Detective Miller's opinions do not rise to the quantum of proof required of expert witnesses in civil proceedings, *i.e.*, to a reasonable degree of scientific certainty or probability.   For this reason as well, Detective Miller's opinions should be excluded at trial.

Moreover, incident to the development of his report for criminal prosecution, Detective Miller rendered opinions regarding the alleged <u>pre-accident</u> conduct of the bus operator described as a "time distance reconstruction" that was "completed backwards" using the speeds of 25 mph and 30 mph.   (<u>See</u> **EXHIBIT 1** at Page 4) . Essentially the bus was placed at locations that would correlate speed and the traffic light timing sequence for traffic signals at intersections <u>before</u> the intersection where the accident occurred.

The stretch of eastbound Florida Avenue, N.W. beginning at its intersection with Phelps Place, N.W. including its intersection with S Street, N.W., up to its intersection with Connecticut Avenue, N.W., is a little over 100 yards.

At 25 mph, Detective Miller concluded that the WMATA bus that was traveling eastbound on Florida Avenue, N.W. ran a red traffic signal at its intersection with Phelps Place, N.W.,  a yellow traffic signal at its intersection with S Street, N.W., and had entered the intersection with Connecticut Avenue, N.W. on a yellow traffic signal.   However, by the time the WMATA bus entered the western crosswalk of Florida Avenue, N.W. and Connecticut Avenue, N.W.,  the traffic signal was red.

At 30 mph, Detective Miller concluded that the WMATA bus that was traveling eastbound on Florida Avenue, N.W. ran a red traffic signal at its intersection with Phelps Place, N.W.,   a red traffic signal at its intersection with S Street, N.W., while at the same time the traffic signal at Florida Avenue, N.W. and Connecticut Avenue, N.W. was yellow.   However, by the time the WMATA bus entered the western crosswalk of Florida Avenue, N.W. and Connecticut Avenue, N.W.,   the traffic signal was red.

In each "time distance reconstruction" scenario presented by Detective Miller, he renders opinions regarding the alleged conduct of the bus operator in running traffic lights at intersections before the subject intersection.   These opinions regarding the running of traffic signals before the accident location are <u>irrelevant</u> to the issue of the bus operator's alleged negligence at the intersection of Florida Avenue, N.W. and Connecticut Avenue, N.W. immediately preceding the collision of the bus and Plaintiff in the westernmost crosswalk of this intersection. Fed. R. Civ. P. 401 and Fed. R. Civ. P. 402.   Furthermore, these opinions will confuse the jury, mislead them on the negligence issue in this case and are unfairly prejudicial to the Defendant.   Fed. R. Evid. 403. In fact, any evidence, comment and/or argument that the Defendant WMATA's bus operator sped

through red traffic lights will only serve to inflame the jury's passion and divert their attention from a careful and deliberative consideration of the facts of this case.   Moreover, opinion evidence that the bus operator failed to obey traffic signals <u>before</u> the accident location is not admissible to show that the bus operator failed to obey the traffic signals at the intersection of Florida Avenue, N.W. and Connecticut Avenue, N.W. at the time of the occurrence.   Fed. R. Civ. 404(b).

**2.      Any comment and/or argument that WMATA's bus operator entered the intersection of Florida Avenue, N.W. and Connecticut Avenue, N.W. on a red traffic signal should be prohibited and excluded at the trial; of this case.**

Plaintiff's counsel on several occasions has misquoted his expert witnesses' opinions and has argued to this Court in prior status conferences that the Defendant WMATA's bus operator "ran three red lights."   Although this statement was made in conferences with the Court, the ease, repetition and rapidity with which it has become an integral part of Plaintiff's counsel's mantra warrants an in limine ruling by the Court before trial.

First and foremost, there is absolutely no evidence from any source, whatsoever, that the bus operator entered the relevant intersection of Florida Avenue, N.W. and Connecticut Avenue, N.W. on a red traffic signal.   (Deposition of David Stopper, Page 98, lines 3-18.)   The bus operator, in fact, did <u>not</u> run "three red lights."

Secondly, as argued above, the alleged conduct of the bus operator prior to entering the intersection of Florida Avenue, N.W. and Connecticut Avenue, N.W. is irrelevant to the issue of the bus driver's alleged negligence in entering the subject intersection.   Fed. R. Evid. 404(b).

Therefore, without any evidentiary basis, whatsoever, any comment and/or argument that the Defendant WMATA's bus operator "ran three traffic lights" should be prohibited and excluded at the trial of this case.

**3.      Any evidence, comment and/or argument related to the driving record of WMATA's bus operator should be prohibited and excluded at the trial of this case.**

The issue in the case sub judice involves the conduct of the bus driver at the intersection of Florida Avenue, N.W. and Connecticut Avenue, N.W. and whether or not such conduct was negligent.   Any evidence, comment and/or argument about the bus driver's driving record is not relevant to the issue of her alleged negligence at the time of the occurrence.   By introducing evidence of actions by the bus operator which might or might not have occurred at other times and under different circumstances, Plaintiff is asserting that the bus operator was negligent based in whole or in part on prior actions.   The use of such prior "bad acts" to prove negligence at the time of the occurrence is irrelevant and inadmissible.   Fed. R. Evid. 404(b).

**4.     Any evidence, comment and/or argument that WMATA bus operators' Standard Operating Procedures establish the standard of care governing the issue of negligence should be prohibited and excluded at the trial of this case.**

Plaintiff intends on using Defendant WMATA's bus operators' Standard Operating Procedures ("SOPs") at the trial of this case in order show the standard of care required of its bus operator at the time of the occurrence and that any alleged breach constituted negligence.

Plaintiff has sued the Defendant WMATA on common law principles of negligence and as codified in District of Columbia traffic regulations.   Plaintiff has not sued the Defendant WMATA on the basis of any breach by the bus operator of WMATA's SOPs.   These SOPs are guidelines developed by WMATA for its bus operators to follow and aspire to.   These SOPs are more stringent and demanding of WMATA's bus operators than common law principles requiring reasonable care.   An employer has the right to hold its employees to a higher standard than the law requires.  Briggs v. WMATA, 481 F.3d 839, 848 (D.C. Cir. 2007). The standards imposed by WMATA on its own bus operators, and the determinations regarding whether a bus operator violated those standards in a particular incident, do not constitute the standards against which WMATA will be determined to have been negligent or not when this case is considered by the jury. In Briggs v. WMATA, supra, a wrongful death case, plaintiff sought to establish WMATA

construction safety procedures as the standard of care, or as evidence of negligence.   The Court of

Appeals disagreed.

> The D.C. Court of Appeals has held that such internal policies - standing alone -
> cannot demonstrate the applicable standard of care. See Clark, 708 A.2d at 636-37
> ("In essence, plaintiff's case here is based upon the proposition that the District
> deviated from its own Plan. That is simply not enough.");   see also Varner, 891
> A.2d at 269-70; WMATA v. Young, 731 A.2d 389, 398 (D.C. 1999) ("[C]ompany
> rules are not`conclusive' or `wholly definitive' . . . .") While internal regulations
> may be "admissible as bearing on the standard of care," admission at trial of the
> WMATA manuals alone would be insufficient, "because expert testimony [would
> still be] required to establish that the [manuals] . . . embod[y] the national standard
> of care and not a higher, more demanding one."   Clark, 708 A.2d at 636.

Id. at 848.

In Varner v. District of Columbia, 891 A.2d 260 (D.C. 2006), plaintiffs argued that

Gallaudet University violated the provisions of its Handbook and was, therefore, negligent in not

dismissing a student who subsequently murdered another student.   Plaintiffs relied only upon the

Gallaudet University Handbook to establish a standard of care.   The Court of Appeals disagreed,

holding that,

> while [the University Handbook is] arguably admissible as evidence of the standard
> of care . . . a defendant cannot be held liable for aspiring to efforts beyond an
> applicable national standard.@

Id. at 270, quoting Clark v. District of Columbia, 708 A.2d 632, 636-37 (D.C. 1997).   In the

absence of testimony establishing the Handbook as a national standard of care, the Court held that

the Handbook provision was inadmissible.

WMATA's SOPs do not create the standard of care by which the jury will assess the

actions of its bus operator at the time of the occurrence.   Plaintiff's expert accident

reconstructionist has not identified any of WMATA's internal guidelines as constituting a national

standard of care in the transportation industry and Plaintiff has not sued the Defendant on the basis

of the bus operator's alleged breach of a national standard of care.   Without expert testimony,

WMATA's SOPs are inadmissible.   Therefore, any evidence, comment and/or argument about

that WMATA bus operators' Standard Operating Procedures and any alleged violation thereof

should be prohibited and excluded at the trial of this case.

5. **Any evidence, comment and/or argument on any internal WMATA disciplinary**
**proceedings and/or labor union-WMATA arbitration proceedings should be prohibited**
**and excluded at the trial of this case.**

Plaintiff may attempt at the trial of this case to introduce evidence, comment and/or argue

the institution, conduct and results of WMATA's internal disciplinary proceedings and labor

union-WMATA arbitration proceedings arising out of WMATA's internal disciplinary

proceedings.

WMATA's internal disciplinary procedures are quick (within 20 days), summary

(evidence gathering is limited) and confined solely to the determination of whether or not a

violation of internal SOPs occurred.   As a result of WMATA's internal findings and actions,

employees may arbitrate the results according to labor union-WMATA contracts.   These

arbitration proceedings are administrative in nature and deal solely with WMATA's internal SOPs

and labor-union-WMATA practice and procedures.

As previously stated, the standards imposed by WMATA on its own bus operators through

its SOPs and the determinations regarding whether a bus operator violated those SOPs in a

particular incident, do not constitute the standards against which WMATA will be determined to

have been negligent or not when this case is considered by the jury. Briggs v. WMATA, supra.

Furthermore, disciplinary proceedings and any labor union-WMATA arbitration

proceedings arising therefrom resulting from WMATA's internal assessment of violations of its

SOPs are inadmissible on ground of the self-evaluative privilege recognized in the District of

Columbia. See Plough v. Nat'l. Academy of Sciences, 530 A.2d 1152, 1157 (D.C. 1987), citing

Ross v. Bolton, 106 F.R.D. 22, 24 (S.D.N.Y. 1985) (material representing staff analyses of data in

quasi-governmental agencies investigation into illegal securities trading protected from discovery;

8

defendant permitted discovery of factual data, but not staff analyses of data); <u>Bredice v. Doctor's</u> <u>Hosp.</u>; 50 F.R.D. 249, 250-51 (D.D.C. 1970) (hospital staff committees charged with reviewing clinical work at hospital), <u>Granger v. Nat'l. R.R. Passenger Corp.</u>, 116 F.R.D. 507, 510 (E.D. Penn. 1987) (denying a motion to compel the conclusions, opinions and recommendations sections of an internal Amtrak investigation into an accident involving an employee);    <u>Sutton v.</u> <u>WMATA</u>, Civil Action No. 07-cv-1197 (D.D.C. 2007) (Bates, J) (precluding discovery of opinions, conclusions and decisions in disciplinary records involving a WMATA bus operator) (Exhibit #2).

In <u>Martin v. Potomac Electric Power Co.</u>, 1990 U.S. Dist. LEXIS 11784 (D.D.C. 1990), (Exhibit #3), although the district court declined to apply the self-evaluative privilege to employment discrimination litigation, the court held that the privilege recognized in <u>Bredice</u> had continuing vitality in cases involving public health and safety.  It stated, "A[i]t is critical that efforts to understand and correct dangerous conditions are not blocked because companies fear that evidence gathered as part of the corrective process will later be used against them." 1990 U.S. Dist. LEXIS 11784 at *2-*3.

In this case, WMATA's evaluation of the accident and its procedures/proceedings regarding its assessment of an employee's conduct measured by WMATA's internal SOPs should not be considered by the jury in its assessment of the bus operator's conduct at the time of the occurrence.  To allow the jury to consider WMATA's internal disciplinary proceedings would detract from the jury's consideration of the evidence under District of Columbia law. It would also chill WMATA from conducting post-accident investigations based on its internal, more rigorous standards for fear that the results could be later used to expose itself to liability it in civil proceedings.

**6.      Any evidence, comment and/or argument on any internal WMATA investigation should be prohibited and excluded at the trial of this case.**

For the reasons relied upon above with regard to the self-evaluative privilege, any evidence, comment and/or argument regarding the investigation conducted following the accident by WMATA personnel and the findings, conclusions and recommendations of the investigation team should be prohibited and excluded at the trial.   Plaintiff's Exhibit #44.   This type of investigation is performed for the purpose of determining the cause of an accident and whether there were actions that could have been taken to avoid the accident.   The investigation team relies upon their ability to be open, honest and frank regarding their findings and recommendations. Without the protection of such a privilege, corporations might cease to conduct such investigations or fail to use the investigation as a tool for better and safer performance.

7.    **Any evidence, comment and/or argument on future medical costs as projected by Craig Lichtblau, M.D. and Anthony Gamboa, Ph.D. should be prohibited and excluded at the trial of this case as unsupported by any medical opinion**

On April 12, 2011 at his deposition, Plaintiff's expert physiatrist, Craig Lichtblau, M.D., provided a document in supplement to his May 17, 2010 opinion regarding future medical care. That document which had not been provided prior to the deposition, projected the "worst case scenario" for future medical care costs for Ms. Mahnke.   It is that document upon which Plaintiff now seeks to support her claim for damages from between $8 million to $9 million in future medical care costs.   In addition to the fact that the report was provided at the deposition and had not been previously provided to the Plaintiff's medical care providers, it is wholly without support in the record.   There is no treating physician or expert neurosurgeon or neurologist who has provided the opinion that Ms. Mahnke will ever need the level of care projected in that report.   In summary it is speculated that beginning at age 55, and incrementally thereafter, Ms. Mahnke will need increasingly comprehensive medical care ranging from four hours a day, seven days a week to 24 hour a day care by the age 70-75.

Plaintiff's only medical opinion reports from her neurosurgeon, Kevin McGrail, M.D., and her neurologist, Michael Batipps, M.D. are dated July 27, 2010 and June 15, 2010, respectively. The report of Dr. Lichtblau was not provided to either expert witness at the time of their written reports.   Only Dr. McGrail's report of July 27, 2010, references any projections by Dr. Lichtblau and Mr. Gamboa to future medical care costs.   However, that reference was clearly not to the "worst case scenario" by Dr. Lichtblau, because that portion of the report that had not yet been prepared at the time of Dr. McGrail's opinion.     There is no medical opinion in the records of Ms. Mahnke's hospitalizations and rehabilitation which references any projection of medical care beginning at age 55.    Dr. Lichtblau's opinions have no basis in fact and no support in any of the medical data.   Such opinions are in direct violation of Fed. R. Evid. 703.   Without that underlying scientific support, the opinions amount to nothing more than pure speculation, and to present them to the jury would require the jury to engage in pure speculation.

Anthony Gamboa, Ph.D. has provided cost projections for the level of care identified by Dr. Lichtblau.   Because of the baselessness of Dr. Lichtblau underlying data, the evidence of Mr. Gamboa's costs should be excluded.   Mr. Gamboa engaged in no analysis but merely projected future costs ranging from $221,194 to $351,354 based upon a "best case scenario" and from $8,244,334 to $9,044,460 in a "worst case scenario." (Exhibit #4 May 23, 2011 report page 1, Anthony Gamboa).

Neither of these opinions should be presented to the jury and Defendant requests that the court exclude them.

**WHEREFORE**, Defendant Washington Metropolitan Area Transit Authority requests that this Honorable Court enter an Order:

11

1.      Prohibiting and excluding the findings and opinions of Detective Michael Miller works for the Major Crash Investigation Unit, Traffic Safety & Special Enforcement Branch, Metropolitan Police Department at the trial of this case;

2.      Prohibiting and excluding any comment and/or argument that the WMATA bus operator entered the intersection of Florida Avenue, N.W. and Connecticut Avenue, N.W. on a red traffic signal at the trial of this case;

3.      Prohibiting and excluding any evidence, comment and/or argument on the driving record of the WMATA bus operator;

4.      Prohibiting and excluding any evidence, comment and/or argument that WMATA bus operators' Standard Operating Procedures establish the standard of care governing the issue of negligence in this case; and

5.      Prohibiting and excluding any evidence, comment and/or argument on any internal WMATA disciplinary proceedings and/or labor union-WMATA (arbitration) proceedings for such other and further relief as to this Honorable Court deems just and proper.

6.      Prohibiting and excluding any evidence, comment and/or argument referencing the internal investigation by WMATA Safety Committee following the September 3, 2009 accident.

7.      Prohibiting and excluding any evidence, comment and/or argument referencing future life care plan costs.

                    **WASHINGTON METROPOLITAN AREA
                    TRANSIT AUTHORITY**


                    /s/ Kathleen A. Carey_____
                    Kathleen A. Carey #357990
                    Associate General Counsel
                    600 Fifth Street, N.W.
                    Washington, D.C.   20001
                    (202) 962-1496
                    (202) 962-2550
                    kcarey@wmata.com

/s/   Nicholas S. Nunzio, Jr.
Nicholas S. Nunzio, Jr. #362578
Associate General Counsel - WMATA
600 Fifth Street, N.W.
Washington, D.C.   20001
Telephone:   (202) 962-1028
Facsimile: (202) 962-2550
nnunzio@wmata.com