# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMANDA MAHNKE                              :

       Plaintiff,                        :

       v.                                :     **Case No. 1:10-cv-00021-BAH**

WASHINGTON METROPOLITAN            :
   AREA TRANSIT AUTHORITY

                    :

       Defendant.                        :

                    :

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S OMNIBUS MOTION IN LIMINE

The Plaintiff Amanda Mahnke, by and through undersigned counsel, Patrick M. Regan, Paul Cornoni, and the law firm of Regan Zambri & Long, PLLC, hereby files this Opposition to Defendant Washington Metropolitan Area Transit Authority's Omnibus Motion in Limine.

In further support of her Opposition, Plaintiff respectfully refers the Court to the Memorandum of Points and Authorities.

Respectfully submitted,

REGAN ZAMBRI LONG

By:  **/s/Patrick M. Regan**

Patrick M. Regan    #336107
pregan@reganfirm.com
Paul Cornoni       #489398
pcornoni@reganfirm.com
1919 M Street, NW, Suite 350

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Washington, DC  20036
PH:   (202) 463-3030
FX:   (202) 463-0667
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this <u>13th</u> day of October 2011, a copy of the foregoing Plaintiff's Opposition to Defendant's Omnibus Motion in Limine, Memorandum of Points and Authorities in support thereof and proposed Order was electronically filed and served via the Court's CM/ECF system and served on:

Kathleen A. Carey, Esquire
Nicholas S. Nunzio, Esquire
Washington Metropolitan Area Transit Authority
600 Fifth Street, NW
Washington, DC  20001


__/s/Patrick M. Regan__
Patrick M. Regan

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMANDA MAHNKE** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. 1:10-cv-00021-BAH** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S OMNIBUS MOTION IN LIMINE

## I.   DETECTIVE MILLER'S TESTIMONY IS RELEVANT AND ADMISSIBLE

Defendant has provided no valid reason or legal authority for the Court to take the unusual approach of striking an independent witness in this case. There is no surprise concerning his testimony. In fact, on April 11, 2011, Defendant WMATA called Detective Miller **as its own witness** in the arbitration proceedings against Ms. Proctor in which WMATA was seeking to dismiss Ms. Proctor as a result of her reckless driving. (See Exhibit A, Transcript of Arbitration Proceedings on April 11, 2001[1])

---

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

[1] Prior to his deposition in the present case before the Court, Detective Miller was called as a witness by counsel for WMATA in the arbitration hearing surrounding Ms. Proctor's termination. At which time, he gave extremely detailed information concerning his accident reconstruction and the sequencing of the lights. (Exhibit A at pp. 260-316) Plaintiff was not advised of this hearing, however, was advised of his favorable testimony and conclusions at his deposition on April 15, 2011.

Detective Miller's testimony and reconstruction is the most relevant and reliable evidence in this case and Defendant WMATA, in this litigation, has retained an expert to expressly rebut this testimony.  There is no surprise or prejudice to the Defendant. David Plant, Defendant's accident reconstructionist, has authored a report disputing Det. Miller's findings.  Further, Mr. Plant has created a video demonstration critiquing Det. Miller's conclusions which is listed on the Joint Pretrial Statement as a defense exhibit.

From the date of the accident, September 3, 2009, WMATA was specifically on notice that Detective Michael Miller of the D.C. Metropolitan Police Department was performing an investigation and an accident reconstruction of the incident at issue. In fact, various representatives of WMATA, including the Office of General Counsel, had numerous email and other exchanges with Det. Miller beginning in September and October 2009.  (See Exhibit B, Emails between WMATA and Detective Miller attached hereto).  **On October 2, 2009,** Associate General Counsel, Janice Cole, even questioned Det. Miller about the specific methods of his investigation.   (Id.)   These emails explicitly demonstrate that WMATA, in fact, had more contact with, and knowledge of, Det. Miller's analysis.

**On April 27, 2010,** both Plaintiff Amanda Mahnke **and** WMATA listed Detective Michael Miller as a witness on their 26(a)(1) Initial Disclosures.  (See Exhibit C, Plaintiff's and WMATA's Initial Disclosures).  At that time, Defendant WMATA already possessed and reviewed Detective Miller's initial report which is attached

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 2 -

hereto as Exhibit D.   The report discusses preliminary findings and a pending investigation of Det. Miller concerning the traffic light cycle.

Further, Plaintiff Amanda Mahnke listed Det. Michael Miller, as the first (#1) non-retained expert in her Preliminary Expert Witness disclosures on July 16, 2010. (See Exhibit E, Plaintiff's Preliminary Expert Designation).[2]

Throughout the initial stages of this litigation, Defendant WMATA repeatedly requested that Judge Sullivan stay this litigation until WMATA received the accident reconstruction report from Det. Miller. Under these circumstances, it is extraordinary that WMATA would now attempt to feign surprise or prejudice at Det. Miller's report. All parties were waiting for the completion of Det. Miller's accident reconstruction report, as well as the criminal investigation being conducted by the United States Attorney's Office, and as soon as Det. Miller's report was available, it was furnished to Defendant WMATA.

As mentioned previously, on April 11, 2011, Defendant WMATA called Det. Miller **as its own witness** in the arbitration proceedings against Ms. Proctor.   (See Exhibit A).   Apparently, WMATA's position is:   it is okay for WMATA to call Det. Miller as a witness in the arbitration proceeding where WMATA is attempting to fire

---

[2] Federal Rule of Civil Procedure 26(a)(2)(B) does not require that a party provide a written report for a non-retained expert such as Detective Miller.  However, the complete accident reconstruction report was provided to Defendant well over 6 months prior to trial and 4 months prior to the deadline of Defendant's expert witness disclosures.  On the contrary, to date, Defendant has not provided Plaintiff with an expert witness report of at least one of Defendant's expert witnesses, who has been retained to offer opinions concerning Ms. Mahnke's traumatic brain injury.  Plaintiff has not raised this as an issue before the Court and will simply take the deposition of this expert once a report is made available.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Ms. Proctor for her reckless driving, but it is not okay for Plaintiff to call Det. Miller in the lawsuit stemming from the catastrophic injuries suffered by Ms. Mahnke as a result of Ms. Proctor's reckless driving.

Of particular significance, in this litigation, Defendant WMATA deposed Det. Miller **on April 15, 2011**. (See Exhibit F, Defendant's Deposition Notice of Detective Miller).[3]   At the time of his deposition, Det. Miller produced his complete accident reconstruction report (which had previously been given to WMATA but not Plaintiff), and all parties had an opportunity not only to review the report, but to question Det. Miller concerning his opinions, conclusions and findings.

Since taking Det. Miller's deposition and obtaining his report, WMATA hired an accident reconstructionist, David Plant, in an attempt to dispute Det. Miller's findings and conclusions.   Mr. Plant authored a report which is attached hereto as Exhibit G. This report focuses on Det. Miller's analysis.   Mr. Plant disputes some of Det. Miller's conclusions.   Detective Miller's name was mentioned at least seventeen (17) times in Plaint's seven (7) page report.   In his deposition, Mr. Plant admits that he spoke with Det. Miller to ascertain additional details about the police reconstruction.   (See Exhibit H, Deposition of Plant at p. 121:5-17; 124:1-7)   Defense Counsel also questioned Mr. Plant concerning his opinions, conclusions and criticisms of Det. Miller's

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[3] Defendant's Motion states that Detective Miller was not deposed.   This is incorrect.   He was deposed on April 15, 2011 in the office of Defense Counsel.   Further, Defendant has deposed other non-retained experts similarly listed on Plaintiff's disclosures, including but not excluding, Dr. Joseph Bleiberg. Defendant has not moved to strike Dr. Bleiberg, nor would such a motion be appropriate.

reconstruction.  (See Exhibit H at pp. 137:14-138:15)  Mr. Plant also authored a video critique of Det. Miller's bus simulations.  (Id. at pp. 139-151)

Under these circumstances, it is disingenuous for WMATA to argue that there is any prejudice in allowing Det. Miller to testify concerning his thorough reconstruction and report.  The only "prejudice" stemming from Det. Miller's report is the fact that his investigation and reconstruction concluded that Defendant WMATA's bus driver ran three red lights and was speeding during her reckless drive on Florida Avenue before striking Ms. Mahnke in the crosswalk.

In summary, Det. Miller's report was disclosed to both parties on April 15, 2011, more than six months before trial.  Defendant's expert has performed his own accident reconstruction and video analysis of Det. Miller's reconstruction and apparently quibbles with some of the less significant findings made by Det. Miller.  WMATA has gone to the trouble of hiring its own expert to dispute Det. Miller's findings, and then attempts to argue to this Court it did not have sufficient knowledge that Det. Miller would be called as a witness at trial.  Plaintiff submits that the Court can readily appreciate WMATA's argument for exactly what it is.

Recognizing that its argument alleging surprise with respect to Det. Miller's report is less than credible, Defendant WMATA finally resorts to arguing that his testimony would be cumulative.  The Court should reject this argument for a number of reasons.  Plaintiff submits that there will be no cumulative evidence between the

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

testimony of Det. Miller and Plaintiff's liability expert, David Stopper.[4]  Mr. Stopper was retained at an early stage of this litigation, prepared two preliminary reports, and at the time of those reports, Det. Miller's report had not been finalized and produced to the parties.

Mr. Stopper also never conducted the detailed reconstruction performed by Det. Miller which involved closing traffic on the entire intersection and actually operating the identical bus in a simulation of the reckless driving of WMATA's operator. Mr. Stopper will be testifying concerning the standards of care applicable to commercial drivers and Carla Proctor's reckless and grossly negligent violation of the safety standards.   Mr. Stopper will not be proffered nor testifying as an accident reconstructionist.

During Plaintiff's case in chief, Det. Miller will be the only witness providing testimony concerning accident reconstruction.  Det. Miller is eminently qualified as an accident reconstructionist, has been performing accident reconstruction duties for the Metropolitan Police Department for many years, and has previously given expert testimony on this subject.  While WMATA will suffer no prejudice from Det. Miller's testimony, Plaintiff Mahnke will be prejudiced since Det. Miller is an independent, non-retained expert.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[4] The evidence at trial will not be cumulative.  Curiously, Defendant requests that if the evidence is cumulative that the Court order Plaintiff to call David Stopper rather than Detective Miller.  Defendant offers no legal authority for its request to force Plaintiff to call one expert rather than another.  If the Court rules that the evidence is cumulative, then Plaintiff has the right to decide which expert will be called.

The jury is entitled to evaluate Det. Miller's credibility as an independent non-retained expert who did not come to this litigation with a bias for or against Ms. Mahnke or for or against WMATA.  He simply performed a reconstruction based upon the undisputed facts.

## II. OVERWHELMING EVIDENCE DEMONSTRATES CARLA PROCTOR RAN THREE RED LIGHTS

In Section 2 of Defendant's Motion in Limine, Defendant inappropriately requests that the Court prohibit any testimony concerning the fact that the Defendant's bus operator, Carla Proctor, ran three red lights immediately prior to striking Ms. Mahnke in the crosswalk.  WMATA's argument concerning the "three red lights" is misleading.  In his accident reconstruction report, Det. Miller concluded:

> The WMATA bus was traveling at a speed of at least 30 miles per hour on Florida Avenue in the moments leading up to when the Defendant struck Plaintiff. The posted speed limit was 25 miles per hour.

> Immediately prior to running the yellow light at Florida Avenue and Connecticut Avenue, **the Defendant had passed through a red light at Florida Avenue and S Street.**

> Immediately prior to running the red light at Florida Avenue and S Street, **the Defendant had also run a red light at Florida Avenue and Phelps Place.**

> **When the bus entered the intersection at Florida Avenue and Connecticut Avenue, the signal was "all red" for the entire intersection.**

(*See* Det. Miller's Report at pp. 5-7, Exhibit I).

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

By taking Mr. Stopper's statement wholly out of context, WMATA argues that Plaintiff's expert has "expressly rejected" the contention that the bus operator ran a series of red lights. Yet during his deposition, Mr. Stopper repeatedly informed Defense counsel that, based on the information available to him at the time of his accident reconstruction, he did not at that time formulate any conclusions regarding the traffic lights at the intersections prior to where this incident occurred:

> Q:   Where in your report do you refer to anything respecting of any traffic light at Phelps Place and Florida Avenue, S Street and Florida Avenue or 21st Street and Florida Avenue?
>
> A:   Again, I did not specifically refer to those traffic lights.
>
> Q:   So you haven't made any determination – in your report is there any determination as to what the color of the traffic light was when this bus passed through any or all of those intersections?
>
> A:   No.

(Stopper Depo. Tr. 94-5, lines 16-4, Attached hereto as Exhibit J).

Mr. Stopper expressly deferred to Det. Miller's investigation on this issue concerning the sequencing of the lights, and was not asked to opine on it. As such, it is perfectly understandable that he "could not say within a reasonable degree of scientific certainty" whether the bus did or did not run through a series of three red lights. This testimony is not, as WMATA has portrayed, an express rejection of any contention. Rather, it is simply a deference to Det. Miller which is logical since Mr. Stopper was

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

not provided with Det. Miller's report until approximately ten months after he prepared his preliminary report in this matter.

Further, WMATA's own risk analysis report concludes that "Additionally, the report identifies Bus 4262 traveled through an intersection on a red traffic light over the posted speed limit." (Exhibit K at p. 1, Defendant's September 3, 2009 Memorandum). Therefore, Det. Miller, along with WMATA, has concluded that Carla Proctor ran the red light at Florida and Connecticut Avenue. Det. Miller also concluded that Carla Proctor ran the immediate two previous red lights at the intersections of Phelps Place and Florida Avenue, and Florida Avenue and S Street. Based upon the independent accident reconstruction conducted by the Metropolitan Police Department, Ms. Proctor ran the red lights at Phelps Place and S Street within seconds prior to the time her speeding bus struck Ms. Mahnke in the crosswalk.

Defendant also argues that the running of the prior traffic lights at the intersections of Phelps Place and Florida Avenue, and Florida Avenue and S Street is irrelevant to the issue of the bus operator's alleged negligence at the intersection of Florida Avenue and Connecticut Avenue. This argument is wrong.

Defendant is attempting to color these prior intersections as irrelevant, prior bad acts. However, these prior intersections are extremely close to the intersection of Florida and Connecticut and highlight Carla Proctor's negligence, recklessness and gross negligence. According to the independent reconstruction performed by the MPD, the speeding bus traveled through these three intersections in less than fifteen seconds.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

WMATA cannot credibly argue that Ms. Proctor's speeding and running of red lights in the fifteen seconds prior to striking Ms. Mahnke in the crosswalk is not relevant to the evidence of gross negligence.   Ms. Proctor's reckless conduct immediately preceding the time she drove her speeding bus into Ms. Mahnke in the crosswalk cannot be parsed and separated as requested by WMATA.   These reckless acts clearly demonstrate a conscious disregard for human safety and are critically relevant to Plaintiff's claim for gross negligence.

For these reasons, Defendant's request to have this Court limit the evidence concerning the bus operator's conduct fifteen seconds prior to the collision is inappropriate.

## III.   DEFENDANT'S MOTION IN LIMINE CONCERNING CARLA PROCTOR'S PRIOR DRIVING RECORD

Plaintiff does not intend to introduce any such evidence, unless and until the Defendant, or Ms. Proctor, opens the door to the relevancy of any such evidence.

## IV.   DEFENDANT'S MOTION IN LIMINE CONCERNING WMATA'S STANDARD OPERATING PROCEDURES

As the Defendant has stated on page 7, "Internal regulations may be admissible as bearing on the standard of care, admission at trial of WMATA manuals alone would be insufficient, because expert testimony still would be required to establish that the manuals embody the national standard of care and not a higher, more demanding one." (Defendant's Motion at p. 7 citing *Clark*, 708 A.2d at 636).   Plaintiff will present David Stopper, a bus safety expert, who will testify concerning the standards of care applicable

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

to commercial drivers such as Ms. Proctor. Mr. Stopper will specifically testify that the standard operating procedures of WMATA embody the national standard of care and do not constitute a higher standard of care.

There appears to be no real issue regarding WMATA's standard operating procedures. WMATA's standard operating procedures embody the national standard of care and are truly self-evident. More specifically, WMATA's standard operating procedures require simple safety rules including, but not limited to, covering the brake while proceeding through an intersection, reducing speed prior to an intersection, yielding the right-of-way to pedestrians and scanning at least one or two city blocks ahead of the bus. These are national standards of care that are applicable in this matter. WMATA cannot attempt to hide these standard operating procedures as they are known in the industry and are valuable pieces of information in this case.

Defendant's claim that Plaintiff's expert has not identified any WMATA internal guidelines as constituting a national standard of care is incorrect. Defense counsel deposed David Stopper on July 8, 2011. During the deposition, defense counsel specifically asked David Stopper concerning which WMATA standard operating procedures he was relying on in his testimony. David Stopper testified as follows:

> Q. Were those the SOPs -- do you know whether the SOPs attached to WMATA's answers to discovery requests were the ones that you reviewed?
>
> A. Yes.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Q.      And you relied upon those in coming to your conclusion
        in this case?

A.      Yes, I would.

(Exhibit J at p. 11:7-17)

                                    *   *   *

Q.      Do you consider it evidence of the standard of care that
        bus operators in -- specifically this bus operator in the
        litigation we're here about today was required to abide
        by?

A.      Yes. I would say so.

(Exhibit J at p. 13:19—14:1)

Mr. Stopper goes on to fully explain how the standard operating procedures are

applicable to Ms. Proctor and this case.  (Exhibit J at pp. 14-22)  For these reasons,

Defendant's SOPs embody the standard of care applicable to Ms. Proctor, and are

therefore, admissible at trial in this matter.

## V.      DEFENDANT'S MOTION IN LIMINE CONCERNING WMATA'S DISCIPLINARY PROCEEDINGS

WMATA is prohibited from making this request.  After the incident, WMATA's

spokesperson, John Catoe, and others specifically stated to the public in press releases

that Ms. Proctor was terminated due to her failure to operate the bus consistent with

WMATA's safety rules and procedures.  (See Exhibit L, WMATA Press Release)

WMATA, a government agency, made the conscious decision to advise the

public of the fact that Ms. Proctor was terminated as a result of this incident.  This is an

admission which has been made to the public at large.  Defendant cannot now contend that Plaintiff should be prohibited from introducing it as evidence in this matter.

Defendant cannot have it both ways.  Through a review of Defendant's Omnibus Motion in Limine, it appears that Defendant is now taking the position that Carla Proctor was not negligent.  Despite the fact that this position is contrary to the videotape and eyewitness testimony, WMATA has already acknowledged such and has admitted that Ms. Proctor was negligent.   WMATA should be prohibited from arguing now that Ms. Proctor's conduct was not reckless and was not a cause of the accident.  However, if WMATA now wishes to take a position contrary to which the governmental agency advised the public of in 2009, Plaintiff should certainly be allowed to present evidence that WMATA not only terminated Ms. Proctor but also took the position in related arbitration proceedings that Ms. Proctor was negligent and her actions caused the bus collision.

## VI.    DEFENDANT'S MOTION CONCERNING INTERNAL WMATA INVESTIGATION

Similarly as above, WMATA should be estopped from making any claims that Ms. Proctor's operation of the bus was not negligent.  However, if Defendant intends to now argue that Ms. Proctor's actions were reasonable, Defendant opens the door to its own prior statements and internal investigation.  More specifically, Defendant WMATA investigated this matter, terminated Carla Proctor, and made the following express findings:

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

**Immediate Cause**

1.   The operator failed to yield pedestrian crossing path of bus.
2.   The operator failed to be alert of the changing of traffic light conditions.
3.   The operator entered the intersection on a yellow light and was unable to clear the intersection before pedestrian traffic began entering.
4.   The operator failed to slow down while traveling through the intersection.
5.   The operator failed to cover the brake.
6.   The operator failed to make the proper observations.
7.   The operator failed to maintain posted speed.
8.   The operator failed to observe all hazards and failed to anticipate movement.
9.   The operator failed to do everything expected of a trained professional while

**Root Cause**

1.   The operator traveled through the intersection on a yellow caution light.
2.   The operator failed to maintain the posted speed limit.
3.   The operator failed to cover the brake while traveling through the intersection.
4.   The operator failed to make proper observation.

(Exhibit K)

Defendant's investigation into this incident is clearly relevant, if, in fact, Defendant now takes the position that Carla Proctor was not negligent.

## VII.   DEFENDANT'S MOTION IN LIMINE TO STRIKE THE FUTURE MEDICAL CARE COSTS

Defendant's motion to exclude some of Ms. Mahnke's future care costs is convoluted and difficult to follow.  Essentially, WMATA seems to be challenging the

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 14 -

qualifications of Plaintiff's medical and economic experts who will be addressing the issue of future care costs. As will be explained below, Plaintiff's experts are eminently qualified to render opinions in this area, and all of the information and reports was conveyed to WMATA during discovery.

At the time of trial, Plaintiff will be presenting a number of expert witnesses who will testify to Ms. Mahnke's future medical care costs and related expenses. These experts include a neurologist (Dr. Michael Batipps), a neurosurgeon (Dr. Kevin McGrail), and a physical medicine and rehabilitation physician (Dr. Craig Lichtblau). Dr. Lichtblau has prepared extensive written reports and has also been deposed. In his reports and testimony, Dr. Lichtblau has described three scenarios for Ms. Mahnke's future care costs: (1) most probable; (2) best case; (3) worst case. Dr. Lichtblau will testify that while the best case and worst case scenarios are possible, the most probable scenario is the one that he believes in his professional judgment Ms. Mahnke will likely require. As the Court might expect, the best case scenario requires less future care than the most probable, and the worst case scenario requires a slightly greater level of care. Plaintiff submits that providing the jury with all three scenarios is appropriate, combined with the medical testimony of the various witnesses. After hearing the testimony, the jury may conclude that Ms. Mahnke's care is likely to be closer to the best case, worst case, or the most probable case.

Dr. Lichtblau, whose CV is attached as Exhibit M, initially examined Ms. Mahnke on May 17, 2010. He subsequently prepared an extensive written report,

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

of a total length of approximately ninety five pages, which was furnished to Defendant

WMATA in July 2010 at the time Plaintiff filed her initial expert disclosure.  In addition

to his initial examination of Ms. Mahnke and initial report, Dr. Lichtblau has examined

Ms. Mahnke on subsequent occasions and has also prepared supplemental addendums to

his report.  His most recent addendum was dated May 26, 2011, and was furnished to

counsel for WMATA on the same day.  (See Email from Patrick Regan to Kathleen

Carey and Nick Nunzio dated May 26, 2011 attached as Exhibit N, Dr. Lichtblau's

May 26, 2011 Report is attached as Exhibit O).  Dr. Lichtblau's "most probable" future

care costs represent costs slightly less extensive than the "worst case scenario".  In other

words, the total amount of the future care costs under the most probable will result in a

lower number when compared to the total number for the worst case scenario.  This

obviously inures to Defendant's benefit.  After receiving Dr. Lichtblau's May 26, 2011

report, counsel for WMATA never requested further materials from Dr. Lichtblau,

never requested further materials or information from Plaintiff's counsel, and never

asked to re-depose Dr. Lichtblau either formally or informally.  While Dr. Lichtblau is

competent in his own right to offer expert testimony as a board-certified physical

medicine and rehabilitation specialist, his testimony and opinions are buttressed by

every single other health care provider involved in the case.

In addition to the testimony of Dr. Lichtblau, Plaintiff will also be presenting the

testimony of Dr. Michael Batipps, a board-certified neurologist, and Dr. Kevin McGrail,

a board-certified neurosurgeon who is Chair of the MedStar Georgetown Hospital

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Neurosurgery Department.   Drs. Lichtblau, Batipps and McGrail, and other health care providers, including neuropsychologists, will testify that Ms. Mahnke has suffered traumatic brain damage, cognitive impairment, and other related injuries to her brain that are severe and permanent.   These experts will testify that Ms. Mahnke's severe cognitive impairment is a permanent condition, will not improve, and will only deteriorate as she ages.

Dr. McGrail specifically stated in his report:

> Based on my review of the documents listed above, as well as my own history and examination, it is my opinion that Ms. Amanda Mahnke has suffered significant and permanent neurological incapacitation as a direct result of her accidental injury that occurred on September 3, 2009. **The monetary losses and future care costs she has sustained from her injury, as detailed in the reports of Anthony Gamboa, Jr., and Craig H. Lichtblau, M.D., are fair and reasonable.**[5]

> My opinion is supported by the MRI imaging study of May 17, 2010, which demonstrated severe, permanent, structural injury to Ms. Mahnke's brain in multiple locations. In addition, her neuropsychiatric testing and physical/rehabilitation evaluation, both of which demonstrated significant impairments, have been performed far enough out from her trauma that her deficits can be considered permanent.

> I hold all of the above opinions to a reasonable degree of medical certainty. I reserve the right to expand or amend my opinions based on additional documents or information that is brought to my attention.

---

[5] Dr. McGrail fully supports the future care costs listed in the worst case scenario and will testify that it his opinion that Ms. Mahnke will need the future medical services listed in the worst case scenario.  For this reason alone, Defendant's motion must be denied.

See Report of Kevin M. McGrail, M.D., F.A.C.S. dated July 27, 2010, attached as Exhibit P.

In fact, Defendant WMATA hired its own neuropsychologist who examined Ms. Mahnke and offered the following opinions and conclusions:

> Overall, the current test findings reveal that Ms. Mahnke has residual cognitive deficits primarily involving verbal learning/-memory and frontal-executive functions stemming from her traumatic brain injury, as well as post-traumatic depression and mild anxiety. Given deficits in verbal learning/memory, processing speed, divided attention/working memory, and sustained and selective attention, she will likely be unable to be gainfully employed in a similar work environment or position to the one that she held pre-injury. Moreover, she is unlikely to be successful in a high pressure, fast paced, and demanding work setting that requires sustained attention, mental flexibility, multitasking, and quick turnaround of work product. In addition, ongoing fatigue and chronic pain, requiring the need for multiple breaks and stretching exercises, will be a complicating factor in her work reentry, at least at the present time and possibly the foreseeable future. Based on the test results and available records for review, Ms. Mahnke is encouraged to attend to further educational and professional pursuits. She will ultimately have greater success in a work and/or educational environment that is flexible and not overly demanding in terms of required tasks and productivity. Continued psychotherapy is advised to address underlying depression and anxiety and a psychiatric consultation may also be beneficial. Additional cognitive rehabilitation may be helpful in developing further compensatory strategies at this stage in her recovery.

See Report of Melissa Carswell, Psy.D., attached as Exhibit Q.

As indicated at the outset of this particular discussion, WMATA's argument is difficult to understand.   To the extent that they are challenging Dr. Lichtblau's qualifications to render these opinions, they should have requested a *Daubert* hearing.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 18 -

To the extent that they are claiming that they have not been provided with the information during discovery, Plaintiff has demonstrated above, all of this information was disclosed to WMATA months before the trial.   There is no valid justification to omit the life care costs of Plaintiff Amanda Mahnke as provided to defense counsel during litigation in this matter.   The Court has recently seen the testimony of Dr. Kevin McGrail in a prior case, who was testifying as an expert hired by WMATA, and can decide for itself the honesty and integrity of this witness.   This witness, as well as several other doctors, will testify that this life care plan is appropriate.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant's Omnibus Motion in Limine.

Respectfully submitted,

REGAN ZAMBRI LONG

By:   **/s/Patrick M. Regan**
Patrick M. Regan          #336107
pregan@reganfirm.com
Paul Cornoni               #489398
pcornoni@reganfirm.com
1919 M Street, NW, Suite 350
Washington, DC  20036
PH:   (202) 463-3030
FX:   (202) 463-0667
*Counsel for Plaintiff*