**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMANDA MAHNKE,<br><br>        Plaintiff,<br><br>        v.<br><br>WASHINGTON METROPOLITAN AREA<br>TRANSIT AUTHORITY,<br><br>        Defendant. | Civil Action No. 10-0021 (BAH)<br>Judge Beryl A. Howell |

**<u>MEMORANDUM OPINION</u>**

On September 3, 2009, plaintiff Amanda Mahnke suffered serious injuries when she was hit by a Washington Metropolitan Area Transit Authority (hereinafter "WMATA") bus in Washington, D.C.  The plaintiff filed a Complaint against WMATA, alleging, *inter alia*, that the bus driver, a WMATA employee, negligently operated the bus.  Pending before the Court is WMATA's motion for summary judgment on grounds that the plaintiff was contributorily negligent and that precludes a judgment in her favor.  The plaintiff denies that she was contributorily negligent, and has filed a motion *in limine* to prevent the defendant from raising a contributory negligence defense at trial, which is scheduled to commence on October 31, 2011. In addition to these motions, the parties have also filed eleven additional motions *in limine* to preclude the admission of certain evidence at trial.  For the reasons discussed below, the defendant's motion for summary judgment and the plaintiff's motion *in limine* to preclude the defendant from raising a contributory negligence defense are denied.  The parties' additional motions *in limine*, as well as their objections to proposed exhibits, are addressed *seriatim* below.

## I.      BACKGROUND

On September 3, 2009, plaintiff Amanda Mahnke was standing at the southeast corner of

the intersection of Connecticut Avenue and Florida Avenue in Northwest, Washington, D.C.

waiting to cross the street.  Pl.'s Opp'n Mot. Summ. J., Statement of Material Facts In Dispute

("Statement of Material Facts"), ECF No. 30, ¶¶ 1, 3.  Standing to the plaintiff's left was

Gabriela Salazar, another pedestrian who was also waiting to cross the street.  *Id.* at ¶ 3.  When

the pedestrian "walk" signal became illuminated, both Ms. Salazar and the plaintiff proceeded to

cross the street.  Def.'s Mot. Summ. J, ECF No. 27, Ex. 3, Salazar Dep. Tr. ("Salazar Dep.") 13,

lines 4-14, Mar. 15, 2011.  After stepping into the intersection, Ms. Salazar noticed that a

WMATA bus was approaching on her left, and immediately stepped back on the curb.  *Id.* at

lines 5-14.  The plaintiff, however, did not notice the approaching bus, and was struck after she

stepped into the crosswalk.  *See* Def.'s Mot. Summ. J., ECF No. 27, Ex. 1, David Stopper Report

dated Feb. 8, 2011 ("Stopper Report"), at 2.  As a result of the accident, the plaintiff alleges that

she suffered numerous injuries, including a fractured skull, epidural hematoma, broken clavicle,

fractured ribs, collapsed lung, pelvis fracture, and traumatic brain injuries.  Compl. ¶ 13.

Prior to the accident, the WMATA bus that collided with the plaintiff was heading east

on Florida Avenue towards Connecticut Avenue.  Statement of Material Facts ¶ 4.  The posted

speed limit for that section of Florida Avenue was 25 miles per hour.  *Id.* at ¶ 5.  The parties

dispute the speed of the metro bus prior to the accident.  The plaintiff's expert claims that the bus

was traveling as fast as 30 miles per hour, while the defendant's expert contends that the bus was

traveling at a speed of approximately 26 miles per hour.  Def.'s Reply Opp'n Mot. Summ. J.

("Def.'s Reply"), ECF No. 32, at 4.  A witness stated that the bus was going 15 miles per hour.

*Id.*  Another witness described the WMATA bus as "just a streak" prior to the accident.  Pl.'s

Opp'n Mot. Summ. J., ECF No. 30, Ex. B, Det. Michael Miller Report ("Miller Report"), at 00054.

As the WMATA bus neared the intersection of Florida Avenue and Connecticut Avenue, the bus's driver, Carla Proctor, saw the traffic signal change from green to yellow. *Id.* at 00052. According to a D.C. Metropolitan Police Department accident reconstruction report, Ms. Proctor admits that she accelerated in an effort to clear the intersection, which spans across eight traffic lanes, before the traffic light turned red. *Id.* The defendant claims that the bus had entered the intersection while the light was still yellow, and concedes that the light turned red before the bus exited the intersection. Statement of Material Facts ¶ 8-9. The plaintiff contends that the traffic light turned red before the bus fully entered the intersection. *Id.*

According to a video of the accident captured by a District of Columbia Department of Transportation traffic camera, the front of the bus was halfway through the intersection, meaning it had crossed four lanes of traffic, when the plaintiff entered the crosswalk. Pl.'s Mot. Limine, Ex. A, Dep't of Transportation Video Footage of Sept. 3, 2009 Collision, frame 42:08:27. The parties dispute what the video shows about the plaintiff's actions immediately prior to the accident: WMATA contends the video establishes that the plaintiff did not look for any oncoming traffic before entering the crosswalk, Def.'s Mem. Supp. Mot. Summ. J., ECF No. 27, at 7, while the plaintiff argues that she did. Pl.'s Opp'n Mot. Summ. J., ECF No. 30, at 14. The plaintiff herself cannot remember the details of the accident prior to being struck. Def.'s Mot. Summ. J., ECF No. 27, Amanda Mahnke Dep. Tr. ("Mahnke Dep.") 27, lines 8-12, Sept. 7, 2010.

On January 7, 2010, the plaintiff filed a Complaint against WMATA,[1] alleging that the defendant's bus driver, Ms. Proctor, was negligent in her operation of the WMATA bus that hit the plaintiff.[2] Compl. ¶¶ 17-29.  The plaintiff seeks $10,000,000 in compensatory damages for the injuries she sustained as a result of the accident.  *Id.* at 10.

On August 5, 2011, following approximately thirteen months of discovery, WMATA moved for summary judgment, arguing that the plaintiff is barred from recovery because she was contributorily negligent for her injuries.[3]  Def.'s Mem. Supp. Mot. Summ. J., ECF No. 27, at 14. On August 12, 2011, before filing an opposition to the defendant's motion for summary judgment, the plaintiff filed a motion *in limine*, asserting that the WMATA bus driver's violation of applicable traffic regulations renders the defendant negligent *per se*, and the defendant should therefore be precluded from raising a contributory negligence defense.[4]  Pl.'s Mem. Supp. Mot. Limine to Strike Defense of Contributory Negligence ("Pl.'s Mot. Limine"), ECF No. 28, at 19.

On October 4, 2011, the plaintiff filed four additional motions *in limine*.  Pl.'s Omnibus Mot. Limine, ECF No. 37.  Two days later, on October 6, 2011, the parties filed their Joint Pre-

---

[1] The Court has jurisdiction over this matter pursuant to the WMATA Compact, D.C. CODE § 9-1107.01, which states that "[t]he United States district courts shall have original jurisdiction . . . of all actions brought by or against [WMATA]." D.C. CODE § 9-1107.01; *see also Barksdale v. Washington Metro. Area Transit Auth.*, 512 F.3d 713, 714 (D.C. Cir. 2008).

[2] The plaintiff initially asserted three counts of negligence against the defendant: (1) Negligence and Negligence *Per Se* on the part of the defendant's bus driver (Count I), (2) Negligent Hiring, Training and Supervision (Count II); and (3) Wanton and Willful Misconduct, Gross Negligence, and Punitive Damages (Count III).  Compl., ¶ 17-43.  On January 28, 2010, shortly after filing her Complaint, the plaintiff voluntarily dismissed Count II, her negligent hiring, training and supervision claim, and Count III, her claim asserting gross negligence and for punitive damages. Pl.'s Jan. 28, 2010 Stipulation, ECF No. 4, at 1; Minute Order dated Jan. 28, 2010 (Sullivan, J.).

[3] The plaintiff states that prior to filing its motion for summary judgment, the defendant "did not request plaintiff's consent." Pl.'s Mot. Limine, ECF No. 28, at 2.  Although Local Civil Rule 7(m) requires parties to confer before filing motions with the Court, this rule applies only to "nondispositive motions."  The defendant was therefore under no duty to seek plaintiff's consent prior to filing its motion.

[4] The defendant contends that the plaintiff's motion *in limine* is "in effect[] a motion for partial summary judgment" and therefore should be denied as untimely because it was filed on August 12, 2011, seven days past the Court's August 5, 2011 deadline for dispositive motions. Def.'s Reply Mot. Limine, ECF No. 32, at 1 n.1.  The plaintiff's motion, however, is not framed as a dispositive motion, nor does she request that the Court grant judgment in her favor.  The plaintiff's motion *in limine* was timely filed, and the Court will consider its merits.

Trial Statement in which they raised objections to certain exhibits proposed by the opposite

party.  Joint Pre-Trial Statement, ECF No. 38.  On October 6, 2011, WMATA also filed seven

motions *in limine*.  Def.'s Omnibus Mot. Limine, ECF No. 39.   The Court held a pretrial

conference on October 17, 2011, at which it heard argument on the pending motions, and

allowed the parties to file supplemental briefs regarding the defendant's motions *in limine* to

exclude the evidence of the defendant's internal investigation and termination proceedings

against Carla Proctor, the driver of the WMATA bus involved in the accident.[5]

    As explained below, the defendant's motion for summary judgment is denied because

numerous material facts remain disputed.  Specifically, the parties dispute whether the plaintiff

checked for oncoming traffic before crossing the street, whether the plaintiff would have been

able to see the WMATA bus if she had looked for oncoming traffic, and whether the WMATA

bus driver had the last clear chance to avoid the accident.  Additionally, the plaintiff's motion *in

limine* to preclude a contributory negligence defense is denied because the determination of

whether the defendant was negligent *per se* rests on factual determinations that are properly

reserved for the jury, and a defendant's violations of traffic regulations do not bar a contributory

negligence defense.  The parties' additional motions *in limine*, as well as their objections to

proposed exhibits, are addressed below.

## II.    WMATA'S MOTION FOR SUMMARY JUDGMENT

    The defendant moves for summary judgment on grounds that undisputed facts

conclusively demonstrate that the plaintiff was contributorily negligent, which bars her from

---

[5] At the pretrial conference, the Court specifically authorized the parties to submit supplemental briefs regarding whether the defendant had waived any self-evaluative privilege it could claim regarding its internal proceedings against Ms. Proctor by issuing a press release on the disciplinary action taken against Ms. Proctor and the reasons for this action.  In its supplemental memorandum, the defendant briefly addressed that issue, but also argued that the internal proceedings are inadmissible pursuant to Federal Rule of Evidence 407, an argument that was not raised in its initial papers. The plaintiff filed her supplemental brief on October 18, 2011, and also requested additional time to respond to the defendant's newly presented argument. The Court granted this request, and instructed the plaintiff to file any supplemental response by October 19, 2011.  Minute Order dated Oct. 18, 2011 (Howell, J.).

recovery in this case.  As explained below, facts essential to a finding of the plaintiff's

contributory negligence remain in dispute.  The defendant's motion for summary judgment is

therefore denied.

### A.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant a motion for

summary judgment "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law" based upon the pleadings, depositions,

and affidavits and other factual materials in the record.  FED. R. CIV. P. 56(a), (c); *Talavera v.

Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  The

Court "need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3).  "The evidence is to be viewed in the light most favorable to the

nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving

party."  *Talavera*, 638 F.3d at 308 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986)); *Tao*, 27 F.3d at 638.  However, "[t]he mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the jury

could reasonably find for the plaintiff."  *Talavera,* 638 F.3d at 308 (citing *Anderson*, 477 U.S. at

252).  The burden is on the moving party to demonstrate that there is an "absence of a genuine

issue of material fact" in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.  Discussion

The defendant asserts that the plaintiff was contributorily negligent when she sustained

her injuries and therefore should be barred from recovery because she entered the intersection

without looking to her left and, as a result, failed to see the oncoming WMATA bus.  As a

general matter, "[i]ssues of contributory negligence, like issues of negligence, present factual

questions for the trier of fact [u]nless the evidence is so clear and undisputed that fair-minded

men can draw only one conclusion." *Lyons v. Barrazotto*, 667 A.2d 314, 322 (D.C. 1995)

(internal citations omitted).  "Only in the exceptional case is evidence so clear and unambiguous

that contributory negligence should be found as a matter of law." *Id.* (quoting *Washington v. A.*

*& H. Garcias Trash Hauling*, 584 A.2d 544, 547 (D.C. 1990)); *see also Paraskevaides v. Four*

*Seasons Wash.*, 292 F.3d 886, 893 (D.C. Cir. 2002) ("Only in exceptional cases will questions of

negligence [and] contributory negligence . . . pass from the realm of fact to one of law," quoting

*Shu v. Basinger*, 57 A.2d 295, 295-96 (D.C. 1948)); *Hsieh v. Consol. Eng'g Servs.*, 569 F. Supp.

2d 159, 182-83 (D.D.C. 2008) ("Contributory negligence is virtually always a question of fact

for the jury," quoting *Andrews v. Wilkins*, 934 F.2d 1267, 1272 (D.C. Cir. 1991)). In cases

involving intersection collisions, "the issues of negligence and proximate cause will almost

always be questions of fact to be decided by the jury." *Washington Metro. Area Transit Auth. v.*

*Jones*, 443 A.2d 45, 49-50 (D.C. 1982) (en banc); *see also Aqui v. Isaac*, 342 A.2d 370, 372

(D.C. 1975) (court reversed judgment notwithstanding the verdict finding that "[a]utomobile

collisions at street intersections nearly always present questions of fact. . . . Only in exceptional

cases will questions of negligence, contributory negligence and proximate cause pass from the

realm of fact to one of law.").  Thus, in order to grant summary judgment, the defendant must

demonstrate that undisputed evidence conclusively establishes that the plaintiff was negligent

when entering the crosswalk. The Court concludes, however, that it does not. Moreover, even if

evidence did establish the plaintiff's contributory negligence as a matter of law, summary

judgment in favor of the defendant is not warranted because the plaintiff may recover, despite

her own negligence, if a jury determines that the WMATA bus driver had the last clear chance of

avoiding the accident.

### 1.   Undisputed Facts Do Not Establish That the Plaintiff Was Contributorily Negligent

In the District of Columbia, "contributory negligence . . . is an affirmative defense in negligence cases and may operate as a complete bar to liability." *Dennis v. Jones*, 928 A.2d 672, 676 (D.C. 2007); *see Burton v. United States*, 668 F. Supp. 2d 86, 107 (D.D.C. 2009); *Lee v. United States*, 570 F. Supp. 2d 142, 155 (D.D.C. 1999) (citing *Lynne v. District of Columbia*, 734 A.2d 168, 172 (D.C. 1999).   In the present case, the defendant argues that the plaintiff is contributorily negligent for her injuries because she "entered the intersection without looking and failed to exercise reasonable care by leaving the sidewalk without ascertaining whether traffic moving through the intersection was approaching."   Def.'s Mem. Supp. Mot. Summ. J., ECF No. 27, at 11-12.

The law imposes a duty on pedestrians to exercise reasonable care for the protection of his or her own safety.  *Lyons*, 667 A.2d at 322; *see also O'Connor v. District of Columbia*, 921 F. Supp. 5, 7 (D.D.C. 1996); *Shonka v. Washington Metro. Area Transit Auth.*, No. 1:08-cv-47, slip. op. at 4 (E.D. Va.  May 5, 2008). "In an intersectional collision case, a plaintiff may be held to be contributorily negligent as a matter of law if he purportedly looks, but fails to see what the evidence conclusively shows was there to be seen."  *Spain v. McNeal,* 337 A.2d 507, 510 (D.C. 1975) (involving collision between two vehicles at an intersection); *Aguehounde v. District of Columbia*, No. 91-cv-9365, slip. op. at 36 (D.C. Super. Ct. Apr. 13, 1993) (citing *Spain v. McNeal* and finding plaintiff contributorily negligent as a matter of law because he did not stop or look before entering the street).[6]  As the court in *Spain* explained, however, in order to

---

[6] The duty of care required of pedestrians in summarized in District of Columbia Standardized Civil Jury Instructions.  Instruction 7.03, the "Duty to Maintain Proper Lookout," provides:

When a person is using, or is about to use, a roadway either as a driver or a pedestrian, [he] [she] has a duty to keep a proper lookout.  That means [he] [she] must reasonably observe traffic and other conditions which confront [him] [her] to protect [himself] [herself] and others while using the roadway.  A person

"invoke [contributory negligence as a matter of law], it must appear as an uncontroverted fact that the other vehicle was within [the motorist's] range of vision at the time he claims to have looked." *Spain*, 337 A.2d at 510.

Based upon the record before the Court, it is far from uncontroverted that the WMATA bus was within the plaintiff's field of vision at the time when she could have looked to her left to check for traffic before entering the crosswalk. Specifically, at least two unresolved facts prevent a finding that the plaintiff's failure to look left makes her contributorily negligent as a matter of law. First, the record indicates that Ms. Salazar was standing to the plaintiff's left, the direction from which the WMATA bus was approaching, while the plaintiff was standing on curb and when they both stepped into the intersection. *See* Statement of Material Facts ¶ 3. It is therefore possible, as the plaintiff argues, that Ms. Salazar obstructed the plaintiff's view of oncoming traffic and of the bus. Pl.'s Opp'n Mot. Summ. J., ECF No. 30, at 13. The evidence in the record therefore does not conclusively establish that the oncoming WMATA bus was within the plaintiff's "field of vision." Second, one witness described the bus as "just a streak." Miller Report, at 00054. If the plaintiff looked to her left, the plaintiff may not have seen the approaching bus because of its speed, may have proceeded onto the crosswalk before the bus entered her field of vision, or may not have had an opportunity to step back to the safety of the curb given the speed at which the bus was travelling. *See* Pl.'s Opp'n Mot. Summ. J., ECF No. 30, at 13. All of these possibilities may properly be considered by a jury.

---

must always use ordinary care to avoid an accident. The law does not try to regulate in detail what particular observations a person should make or what a person specifically should do for [his] [her] own safety. The law does require, however, that a person look effectively. One who looks and does not see what is plainly there to be seen is as negligent as one who never looked at all."
*See also* Instruction 7.13, "Pedestrian's Duty When Crossing Streets" ("Before attempting to cross a street, it is a pedestrian's duty to make reasonable observations to learn the traffic conditions confronting him or her, and try to make a sensible decision whether it is reasonably safe to attempt the crossing.").

In support of its argument that summary judgment is warranted, the defendant relies primarily upon *O'Connor v. District of Columbia*, 921 F. Supp. 5 (D.D.C. 1996), and *Aguehounde v. District of Columbia*, No. 91-cv-9365, slip. op. (D.C. Super. Ct. Apr. 13, 1993). Both cases, however, are distinguishable from the one before the Court.

In *O'Connor*, the plaintiff sued the District of Columbia for negligent maintenance of a roadway after she stepped into an intersection to sidestep a puddle and fell attempting to avoid an oncoming vehicle. 921 F. Supp. at 6. The court held that the plaintiff's "failure even to make one glance to see whether traffic was coming before stepping out into a traffic lane, coupled with plaintiff's failure to observe whether the traffic light had turned red to stop [oncoming] traffic" rendered her contributorily negligent for her injuries. *Id.* at 7. Unlike the case before the Court, the plaintiff in *O'Connor* admitted that she did not know whether the traffic signal had changed from red to green before she proceeded into the street. *Id.* at 6. Indeed, "the pedestrian was only 'hoping' that the light would change." Pl.'s Opp'n Mot. Summ. J., ECF No. 30, at 14. Here, the plaintiff waited for the 'walk' signal before proceeding across the intersection in the crosswalk, and evidence does not conclusively establish that the plaintiff failed to look for an oncoming vehicle or, if she had looked, would have been able to see the bus or had sufficient time to step back to the safety of the curb. A reasonable juror could therefore conclude that the plaintiff exercised due car prior to the accident.

The defendant's reliance on *Aguehounde* is similarly inapposite. In that case, the plaintiff was struck by a car immediately upon stepping into a crosswalk. *Aguehounde,* No. 91-cv-9365, slip. op. at 27. The court found the plaintiff contributorily negligent for his injuries, stating that "[g]iven [plaintiff's] unobstructed view, there exists no doubt that had [the plaintiff] looked to his left just before he stepped, he would have seen the [] car coming at him at a speed of 20 or 25

miles and [sic] hour." *Id.* at 28-29.  In the present case, as explained above, it is not clear that the plaintiff had an unobstructed view of the intersection and could have seen the oncoming WMATA bus, or if she saw the bus, whether the plaintiff had time to step back to the safety of the curb, due to the speed at which the bus was travelling.

In sum, the record in this case does not conclusively establish that the plaintiff failed to exercise reasonable care when crossing the street.  The parties dispute whether the plaintiff looked in the direction of the approaching WMATA bus before deciding to enter the crosswalk. Moreover, they dispute whether the plaintiff's view of the intersection was obstructed by Ms. Salazar, who was standing to the plaintiff's left and conceivably could have blocked the WMATA bus from the plaintiff's view.  Finally, the parties dispute the speed at which the bus was traveling, and the bus' speed may have made it impossible for the plaintiff to return to the safety of the curb even if she had seen the bus approaching.  These disputed factual questions, among others, must be resolved by a jury.

## 2.   The Last Clear Chance Doctrine Precludes Summary Judgment

Even if the plaintiff were contributorily negligent, the plaintiff argues that summary judgment in the defendant's favor should be denied because she may still be able to recover pursuant to the last clear chance doctrine.  Pl.'s Reply Opp'n Mot. Limine, ECF No. 35, at 12.

"Under the doctrine of last clear chance, a plaintiff may recover, despite his own contributory negligence, if he can demonstrate that 'the defendant had a superior opportunity to avoid the accident.'"  *Washington Metro. Area Transit Auth. v. Young*, 731 A.2d 389, 394 (D.C. 1999) (citing *Phillips v. D.C. Transit System, Inc.*, 198 A.2d 740, 741-42 (D.C. 1964)); *see also Hall v. Carter*, 825 A.2d 954, 958 (D.C. 2003) ("[T]he 'last clear chance' instruction means that, after both plaintiff and defendant negligently have created a situation dangerous to plaintiff, the

defendant can be held liable nonetheless, after plaintiff no longer can save the situation, if the defendant still could have protected plaintiff from harm . . . but -- *in a second negligent act or omission* -- failed to do so.") (emphasis in original).

To prevail under this doctrine, the plaintiff must show that: "(1) the plaintiff was in a position of danger caused by the negligence of both plaintiff and defendant; (2) the plaintiff was oblivious to the danger, or unable to extricate [herself] from the position of danger; (3) the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiff's danger and of [her] obliviousness to it, or [her] inability to extricate [herself] from it; and (4) the defendant, with means available to [the defendant], could have avoided injuring the plaintiff after becoming aware of the danger and [the plaintiff's] inability to extricate [herself] from it, but failed to do so." *Juvenalis v. District of Columbia*, 955 A.2d 187, 191 n. 2 (D.C. 2008) (citing *Hall v. Carter*, 825 A.2d at 958); *Evans v. Wash. Metro. Area Transit Auth.*, 674 F. Supp. 2d 175, 182 n.2 (D.D.C. 2009) (citing *Queen v. Wash. Metro. Area Transit Auth.*, 842 F.2d 476, 481 (D.C. Cir. 1988)); *Felton v. Wagner*, 512 A.2d 291, 296 (D.C. 1986).

Here, as the plaintiff argues, a reasonable juror could conclude that the WMATA bus should have been aware of the danger of pedestrians in the crosswalk and should have stopped after seeing the plaintiff enter the intersection, particularly since it is undisputed that the plaintiff had a "walk" signal. *See* Miller Report, at 00053-54.  Indeed, plaintiff's accident reconstruction expert stated during his deposition that if the WMATA bus were proceeding within the speed limit, the bus driver "more likely than not could have stopped at 25 miles an hour." Pl.'s Reply Opp'n Mot. Limine, Ex. C, ECF No. 35, David Stopper Dep. Tr. ("Stopper Dep.") 72, lines 2-7, July 8, 2011.  This opinion is not refuted since WMATA's expert apparently could not render an opinion on whether the bus could have stopped if the bus were traveling within the speed limit.

Pl.'s Reply Opp'n Mot. Limine, Ex. D, ECF No. 35, David Plant Dep. Tr. ("Plant Dep.") 110,

lines 4-9, Sept. 1, 2010.  A reasonable juror could conclude, based on this testimony, that the

WMATA bus driver could have stopped after seeing the plaintiff enter the intersection and

therefore had the last clear chance to avoid the accident.  *See Washington Metro. Area Transit

Auth. v. Jones*, 443 A.2d 45, 50 (D.C. 1981) ("The jury must be allowed to weigh the credibility

of the witnesses and resolve disputes as to speed and distances.") (en banc).  If the jury

determines that the defendant had the last clear chance to avoid the accident, the plaintiff's

contributory negligence would not bar a judgment in her favor.  The defendant's motion for

summary judgment is therefore denied.

## III.    PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE A CONTRIBUTORY NEGLIGENCE DEFENSE

The plaintiff has moved *in limine* to preclude the defendant from asserting at trial that the

plaintiff was contributorily negligent.  Pl.'s Mot. Limine, ECF No. 28.  Specifically, the plaintiff

contends that a contributory negligence defense is unavailable when the defendant is negligent

*per se* for violating traffic regulations.  *Id.* at 11.  The defendant counters that violations of traffic

regulations do not constitute negligence *per se*.  The plaintiff further contends that the

defendant's gross negligence overcomes the defense of contributory negligence, Pl.'s Opp'n

Mot. Summ. J., ECF No. 30, at 21, a theory that the defendant contends is without any support in

this jurisdiction.  Def.'s Reply Mot. Summ. J., ECF No. 32, at 8-10.

The Court concludes that the defendant's alleged violations of traffic regulations may

constitute negligence *per se*, but whether the defendant violated applicable traffic regulations is a

matter for the jury to decide.  Further, the Court holds that the defendant is not precluded from

raising a contributory negligence defense where the defendant's negligence *per se* is triggered by

violations of traffic regulations.  Finally, the Court finds that plaintiff may not assert now a claim

of gross negligence, which was contained in a count voluntarily dismissed by the plaintiff.  Even

if a claim of gross negligence were before the Court, however, there is scant support in this

jurisdiction for the proposition that gross negligence precludes a contributory negligence

defense.

### A.  Negligence *Per Se* Based on Violations of D.C. Traffic Regulations

In the District of Columbia, "where a particular statutory or regulatory standard is

enacted to protect persons in the plaintiff's position or to prevent the type of accident that

occurred, and the plaintiff can establish his relationship to the statute, unexplained violation of

that standard renders the defendant negligent as a matter of law." *Childs v. Purll*, 882 A.2d 227,

235 (D.C. 2005) (internal citation and quotation marks omitted); *Richardson v. Gregory*, 281

F.2d 626, 629 (D.C. Cir. 1960); *see Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 557 (D.C.

Cir. 1993) (quoting *Ceco Corp. v. Coleman,* 441 A.2d 940, 945 (D.C. 1982)); *Iacangelo v.

Georgetown Univ.*, 595 F. Supp. 2d 87, 91 (D.D.C. 2009) (same).  Although the defendant

contends otherwise, D.C. courts have repeatedly held that "the unexplained violation of a traffic

regulation enacted . . . to . . . prevent the type of accident that occurred constitutes negligence *per

se*." *Burns v. Washington Metro. Area Transit Auth.*, 114 F.3d 219, 223 (D.C. Cir. 1997)

(internal citations and quotation marks omitted); *see also Stevens v. Hall*, 391 A.2d 792, 796 n.2

(D.C. 1978) ("Our Court of Appeals has consistently held in personal injury cases involving

vehicles that if an applicable traffic regulation is violated negligence has been established as a

matter of law, thus leaving only the question of proximate cause to be decided," quoting *Herrell

v. Pimsler*, 307 F. Supp. 1166, 1168 (D.D.C. 1969)); *Bauman v. Sragow*, 308 A.2d 243, 244

(D.C. 1973) (per curiam) ("Violation of traffic regulations may, of course, constitute negligence

per se."); *Herrell*, 307 F. Supp. at 1168 ("It is firmly established in this jurisdiction that violation

14

of traffic regulations designed to promote safety is negligence as a matter of law where actions of adults are involved."); *see also Abel v. First Sec. Ins. Co. of Am.*, 120 A.2d 586, 587 (D.C. App. 1956) ("[A]lthough violation of traffic regulations may be negligence per se, it is still a question of fact whether or not the regulations were actually violated, and if so whether their violation was the proximate cause of the collision.").

The plaintiff claims that the defendant is negligent *per se* for, *inter alia*, failing to slow and stop for a yellow traffic signal, failing to adhere to the posted speed limit, and failing to give the plaintiff the right-of-way when she was in the crosswalk.[7]  Pl.'s Mot. Limine, ECF No. 28, at 17-19.  The regulations the WMATA bus driver allegedly violated were enacted for the safety of pedestrians.  *Id.* at 17.  Thus, if the plaintiff can establish that the WMATA bus failed to adhere to these regulations, and that these violations were a proximate cause of her injury, she would establish that the defendant's bus driver was negligent *per se*.

As explained previously, however, whether the WMATA bus violated traffic regulations prior to colliding with the plaintiff is a disputed factual matter that precludes a finding of negligence *per se*.  The parties dispute the speed of the WMATA bus,[8] whether the light was yellow or red when the bus approached the intersection, whether the bus could and should have stopped at the red light instead of proceeding through the intersection,[9] and whether the

---

[7]  The plaintiff contends that the defendant's bus driver was in "direct violation of multiple traffic safety laws found under D.C. Code Section 50-2201.28 and Title 18 of the District of Columbia Municipal Regulations, including but not limited to the following Sections: 2103.5, 2200.2, 2200.3, 2200.4, 2200.5, 2207.2, 2208.6, and 2208.11."  Pl.'s Opp'n Mot. Summ. J., ECF No. 30, at 6.

[8]  The defendant argues that although "[t]he speed limit through the intersection is 25 MPH . . ., the record as it currently exists places the bus' speed from 26 MPH (findings by WMATA investigation) to 27.28 (Stopper Report dated February 8, 2011 item #10) to close to 30 MPH (Miller Report Item #8).  One eyewitness account placed the bus' speed at approximately 15 MPH.  (Andrew Fasoli) (Plaintiff's Exhibit B at p. Miller00053)."  Def.'s Reply Mot. Summ. J., ECF No. 32, at 4.

[9]  The defendant contends that the WMATA bus could lawfully proceed through the intersection "if the driver had either entered it on a green light or if after seeing the signal change to amber he was unable to stop with safety,

WMATA bus could have yielded to the plaintiff in the crosswalk and consequently avoided the accident. Def.'s Reply Mot. Summ. J., ECF No. 32, at 2-4. These factual issues must be resolved by a jury prior to a finding that the defendant was negligent *per se*. *See Bauman v. Sragow*, 308 A.2d at 244 ("Whether the applicable regulations were violated, however, and whether their violation was the proximate cause of the collision, are questions of fact for the jury unless reasonable persons could draw but one conclusion from the evidence.").

### B.  Negligence *Per Se* Does Not Bar A Contributory Negligence Defense In This Case

The plaintiff argues that once negligence *per se* is established, the defendant may not raise a contributory negligence defense to excuse its violations of traffic regulations and bar the plaintiff's recovery. The Court disagrees.

In *Martin v. George Hyman Constr. Co.*, 395 A.2d 63 (D.C. 1978), the D.C. Court of Appeals stated that "where the judicially-developed defenses of contributory negligence and assumption of risk conflict with the purposes of the statutes and regulations, such defenses should not bar recovery." *Id.* at 69. The court explained, however, that a contributory negligence defense "may not conflict with the benefit intended by the statute or regulation" in all circumstances, and its availability "depends upon analysis not only of the policies of the [regulation's] enactment but also the relation of those policies to each of the defenses individually." *Id.*

In *Martin,* a construction worker sought recovery for injuries sustained on a construction site and alleged that his employer was negligent *per se* because it failed to adhere to certain workplace safety regulations. *Id.* at 66. The court concluded that a contributory negligence defense was not available to the defendant because some statutes, such as the workplace safety

---

whereupon [s]he would be permitted to continue 'cautiously' through the intersection." *Baltimore Transit Co. v. Putnam*, 241 A.2d 586, 588 (Md. 1968).

regulations at issue in *Martin*, "envision that certain classes of persons likely to be careless require greater protection." *Id.* at 69. These regulations seek to protect individuals from their own negligence and therefore impose obligations on another party in order to prevent injury. *See id.* at 69-70. A contributory negligence defense is not available for violation of such statutes because the defense would undermine the purpose of the statutory scheme to protect certain individuals from their own negligence. *See id.* at 69; *see also Jarrett v. Woodward Bros., Inc.*, 751 A.2d 972 (D.C. 2000) (contributory negligence defense not available to overcome a violation of D.C. Code § 25-121(b), which prohibits the sale of alcohol to minors);[10] *Scoggins v. Jude*, 419 A.2d 999, 1005 (D.C. 1980) ("contributory negligence … will be unavailable as a defense if the effect of a statute 'is to place the entire responsibility for such harm as has occurred upon the defendant,'" quoting Restatement (Second) Torts § 483).

In reaching this conclusion, the D.C. Court of Appeals explicitly stated that a contributory negligence defense would be available for violation of traffic regulations, which serve only "to clarify and define elements of due care." *Martin*, 395 A.2d at 69 (quoting *Bowman v. Redding Co., Inc.*, 449 F.2d 956, 966 (D.C. Cir. 1971)[11]); *see also Perkinson*, 821 F.2d at 692

---

[10] The plaintiff's reliance on *Jarrett v. Woodward Bros., Inc.*, 751 A.2d 972 (D.C. 2000), to support its contention that negligence *per se* bars a contributory negligence defense in this case is unavailing. In *Jarrett,* the court held that a contributory negligence defense could not overcome a violation of D.C. Code. § 25-121(b), which prohibits the sale of alcohol to minors. *Id.* After a lengthy discussion of the legislative history and underlying purpose of the statute, the court stated that availability of a contributory negligence defense would contravene the statutory mandate. *Id.* at 985. The court did not address the availability of contributory negligence outside the context of D.C. Code. § 25-121(b), and did not comment on contributory negligence in the context of violations of traffic regulations.

[11] The defendant relies primarily on *Bowman v. Redding Co., Inc.*, 449 F.2d 956 (D.C. Cir. 1971), which states that

> [i]n the ordinary negligence case involving automobiles, the legislative policy underlying traffic and kindred regulations is discernible as one that is intended to clarify and define the elements of due care. But such regulations are not intended to affect legal doctrines holding that a vehicle operator guilty of negligence – whether ascertained by a jury applying the broad common law standard or by a particular legislative standard – is not liable to an individual whose own negligence materially contributed to his injury. *In such cases the defense of contributory negligence stands unaffected.*

("[W]here a statutorily imposed duty of care does not increase the protection due the protected class, but merely shifts a common law burden from one person to another, the defense of contributory negligence is not affected.").  Traffic regulations are not enacted to protect individuals from their own negligence.  Indeed, under District of Columbia law a person using a street "either a driver or a pedestrian" has a duty "to keep a proper lookout and make reasonable observations as to traffic and other conditions which confront that person, in order to protect all people using the roadways." *District of Columbia v. Robinson,* 644 A.2d 1004, 1007 (D.C. 1994); *see also Lyons v. Barrazotto*, 667 A.2d 314, 321 (D.C. 1995) (same); *Washington Metro. Area Transit Auth. v. Davis,* 606 A.2d 165, 180 (D.C. 1992) ("We can reasonably expect bus drivers to maintain a proper lookout and exercise reasonable care in entering an intersection, especially when they know or should know the thoroughfare has blind intersections, and it is not enough for the driver to assert merely that he had the 'right of way.'") (internal citations and quotation marks omitted); *Frager v. Pecot*, 327 A.2d 306 (D.C. 1974) ("The fact that the operator of a motor vehicle has the right of way does not relieve him from the necessity of looking for the approach of cars on an intersecting street.").

---

*Id.* at 966 (emphasis added); Def.'s Reply Mot. Summ. J., ECF No. 32, at 10.  The plaintiff contends that *Bowman* is no longer good law because it was impliedly overruled by *Belton v. Washington Metropolitan Area Transit Authority*, 20 F.3d 1197 (D.C. Cir. 1994).  *Belton* overruled *Bowman* only with regard to the question of whether a plaintiff must prove antecedent negligence as part of the last clear chance doctrine.  *Id.* at 1200.  *Belton* did not comment on the applicability of the negligence *per se* doctrine, or its relationship to a contributory negligence defense, when traffic regulations are violated.  That said, *Bowman* is not controlling authority because it was issued "*after* February 1, 1971, the date on which, by virtue of the District of Columbia Court Reorganization Act, Pub.L. No. 91–358, 84 Stat. 475, 667, [the D.C. Circuit] ceased to be an authoritative expositor of District law." *Evans v. Washington Metro. Area Transit Auth.*, No. 08-cv-1629, 2011 WL 4599788, at *4 (D.D.C. 2011) (quoting *Belton,* 20 F.3rd at 1200) (emphasis in original); *Martin*, 395 A.2d at 68 (*Bowman* does not serve as binding precedent since the case "was decided after the effective date of the reorganization of the courts of the District of Columbia."); *see also Foshee v. Consol. Rail Corp.*, 849 F.2d 657, 660 (D.C. Cir. 1988); *Jeffries v. Potomac Dev. Corp.*, 822 F.2d 87, 96-97 (D.C. Cir. 1987) (Silberman, J., concurring and dissenting); *Bly v. Tri-Continental Indus.*, 663 A.2d 1232 (D.C. 1995).  Nevertheless, the Court reaches the same conclusion as in *Bowman* that negligence demonstrated by violation of traffic regulations does not bar a contributory negligence defense.

Given that traffic regulations are not enacted with the purpose to protect individuals from their own negligence, a contributory negligence defense would not frustrate or conflict with the underlying purpose of the regulations and remains available to the defendant.  *See Martin*, 395 A.2d at 69 (contributory negligence defense available when it would not "conflict with the purposes of the statutes and regulations"); *see generally Weston v. Washington Metro. Area Transit Auth.*, 78 F.3d 682, 687 n.10 (D.C. Cir. 1996) (contributory negligence defense available because "the D.C. Court of Appeals has decided that the D.C. Elevator Code does not have the purpose to 'protect members of the public from their own negligence,'" quoting *District of Columbia v. Brown*, 589 A.2d 384, 386 (D.C. 1991));  *Valentine v. United States*, 706 F. Supp. 77, 81-82 (D.D.C. 1989) (noting that while "District of Columbia law on negligence per se and its relationship with contributory negligence is less than crystal clear," the court concluded that "defendant's failure to provide heat to [plaintiff]'s apartment constituted a violation of a safety regulation and thus was negligence per se" but contributory negligence "on the part of the plaintiff may block her recovery").  Indeed, the D.C. Court of Appeals has explicitly stated that there is "no merit" to the contention that a "violation of a traffic regulation precludes application of a contributory negligence defense." *Massengale v. Pitts*, 737 A.2d 1029, 1032 n.1 (D.C. 1999) (citing *Martin*, 395 A.2d at 69).

The plaintiff urges the Court to look to *Richardson v. Gregory*, 281 F.2d 626 (D.C. Cir. 1960), and *Burns v. Washington Metropolitan Area Transit Authority,* 114 F.3d 219 (D.C. Cir. 1997), as support for the proposition that a contributory negligence defense should not be available.  Pl.'s Reply Mot. Limine, ECF No. 35, at 11.  These cases only establish that violations of traffic regulations may constitute negligence *per se*.  As previously explained, the Court agrees with and is bound by this precedent that violations of traffic regulations may

constitute negligence *per se*.  Such violations, however, do not warrant "imposition of automatic

liability." *Leiken v. Wilson*, 445 A.2d 993, 1002-03 (D.C. 1982) (stating that a violation of traffic

regulations creates "presumptive liability," which "is established unless the jury also finds that

the violator has produced evidence demonstrating that he or she did everything a reasonably

prudent person would have done to comply with all applicable regulations.").  Pursuant to

*Massengale* and *Martin*, a contributory negligence defense is available to preclude automatic

liability for violations of traffic regulations. Therefore, the defendant may raise a contributory

negligence defense at trial.

### C.  A Gross Negligence Claim Is Not Properly Before The Court

As an alternative ground to bar the defendant from asserting a contributory negligence

defense, the plaintiff argues that gross negligence by the defendant's bus driver "prohibits the

defense of contributory negligence." Pl.'s Opp'n Mot. Summ. J., ECF No. 30, at 21.  The

defendant, in response, argues that gross negligence does not preclude the defense of

contributory negligence in this jurisdiction.

Regardless of which party is correct on the law, the plaintiff voluntarily dismissed her

claim of gross negligence in Count III of the Complaint shortly after initiating this action.  Pl.'s

Stipulation of Jan. 28, 2010, ECF No. 4; Minute Order dated Jan. 28, 2010.  Indeed, the

defendant never answered this claim in the Complaint because it stated that the plaintiff had

"voluntarily dismissed Count III."  Def.'s Answer, ECF No. 5, at 4.  The plaintiff may not now

revive this allegation on the eve of trial.  For this reason, the plaintiff's motion *in limine* to bar

the contributory negligence defense based upon a dismissed claim, which had alleged the

defendant's gross negligence, is denied.

Even if the plaintiff's gross negligence claim were properly before the Court, the plaintiff is unable to point to support in this jurisdiction for the proposition that gross negligence bars a contributory negligence defense. The plaintiff cites *Hall v. Hague*, 257 A.2d 221 (D.C. 1969), as support for the proposition that a finding of gross negligence should bar a contributory negligence defense, but the plaintiff mischaracterizes the court's opinion in that case.  Pl.'s Opp'n Mot. Summ. J., ECF No. 30, at 21-22.  In *Hall*, the plaintiff proposed that gross negligence would bar a contributory negligence defense, but the court itself did not adopt or condone this proposition.  257 A.2d. at 223.

The Court has also reviewed *Andrews v. Wilkins*, No. 88-cv-1326, 1990 WL 102777 (D.D.C. 1990), which addressed the operation of a contributory negligence defense in a case where both negligence and gross negligence claims were asserted.  In this case, the plaintiffs asserted that their son drowned in the Potomac River because the U.S. Park Police were negligent in their rescue attempts. *Id.* at *1-2.  Chief Judge Lamberth concluded that the decedent was contributorily negligent for his death, and the plaintiffs therefore could not recover for negligence. *Id.* at *5-6.  Nonetheless, the court considered the plaintiff's contention that U.S. Park Police were willful and wantonly negligent, but found that facts did not support the allegation. *Id.* at *8. On appeal, the D.C. Circuit affirmed the court's ruling that contributory negligence barred the plaintiff's ordinary negligence claims, and also affirmed the court's conclusion that facts did not support the contention that the defendants were willfully or wantonly negligent.   934 F.2d 1267, at 1272-73 (D.C. Cir. 1991) *abrogated on other grounds Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. Jan 19, 1996).  Although implicit in the district court and D.C. Circuit's analysis was that the decedent's contributory negligence did

not foreclose the plaintiff's willful and wanton negligence claims, this was not an express

holding of either court since neither court had to reach the issue.

The plaintiff urges the Court to adopt the law of North Carolina, another jurisdiction, like

the District of Columbia, in which contributory negligence operates as a complete bar to

recovery.  In *Yancey v. Lea*, 550 S.E.2d 155 (N.C. 2001), the North Carolina Supreme Court held

that "[c]ontributory negligence is not a bar to a plaintiff's recovery when the defendant's gross

negligence, or willful or wanton conduct, is a proximate cause of the plaintiff's injuries."  *Id.* at

157.  The North Carolina Supreme Court defined 'gross negligence' as "wanton conduct done

with conscious or reckless disregard for the rights and safety of others," *id.*, which the plaintiff

argues is "similar" to the definition of gross negligence in the District of Columbia.  Pl.'s Opp'n

Mot. Summ. J., ECF No. 30, at 21-22; *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C.

1997) (stating that gross negligence "requires such an extreme deviation from the ordinary

standard of care as to support a finding of wanton, willful and reckless disregard or conscious

indifference for the rights and safety of others.").   The plaintiff argues that the similarity

between the laws of the two jurisdictions warrants adoption of the *Yancey* holding in this

jurisdiction.

Given the paucity of legal authority from the District of Columbia courts that gross

negligence would bar a contributory negligence defense, the Court declines to adopt that rule

here, where the plaintiff over eighteen months ago voluntarily dismissed the gross negligence

claim in her Complaint.  Accordingly, the plaintiff's motion *in limine* to preclude the defendant

from raising a contributory negligence defense is denied.

## IV.    PLAINTIFF'S ADDITIONAL MOTIONS IN LIMINE

The plaintiff has filed additional motions *in limine*, seeking to (1) preclude any witness from mentioning 18 DCMR § 2303.2; (2) preclude evidence or comment that Ms. Mahnke's parents are psychologists; and (3) preclude evidence concerning eyewitness Gabriela Salazar's "habit" when crossing an intersection.[12]   These motions are discussed individually below.

### A.  Plaintiff's Motion to Preclude Any Witness from Mentioning 18 DCMR § 2303.2

The plaintiff seeks to preclude at trial any reference to D.C. Municipal Regulation 18 § 2303.2, which provides that "[n]o pedestrian shall suddenly leave a curb, safety platform, safety zone, loading platform, or other designated place of safety and walk or turn into the path of a vehicle which is so close that it is impossible for the driver to yield."   The plaintiff argues that this regulation is "not applicable to the facts and circumstances of this case" because the regulation does not govern pedestrians' conduct at a crosswalk regulated by traffic lights and "walk" signals.  Pl.'s Omnibus Mot. Limine, ECF No. 37, at 3.

To support its position, the plaintiff relies on *Aguehounde v. District of Columbia*, No. 91-cv-9365, slip. op. (D.C. Super. Ct. Apr. 13, 1993), in which the D.C. Superior Court stated that 18 DCMR § 2303.2 applies "only to crosswalks not regulated by traffic lights."  *Id.* at *51. While the court acknowledged that it was a "close question" whether the regulation applied when a pedestrian cross signal is present, it ultimately concluded that in the context of other regulations, 18 DCMR § 2303.2 controlled the conduct of pedestrians at places other than those regulated by signals.  *Id.* at *52.

---

[12] The plaintiff has also moved for leave to amend her Complaint in order to increase her *ad damnum* demand for judgment from $10 million to $20 million.  Pl.'s Omnibus Mot. Limine, ECF No. 37, at 4.  The defendant states that it does not oppose this motion.  Def.'s Opp'n Pl.'s Omnibus Mot. Limine, ECF No. 41, at 3.   Accordingly, the plaintiff's motion for leave to amend the *ad damnum* clause in her Complaint to increase the requested compensatory damages to $20 million is granted.

Upon the Court's own review of these regulations, the Superior Court's reasoning in *Aguehounde* is sound and consistent with the manner in which the municipal regulations are structured. 18 DCMR § 2300.1 states that "[p]edestrians shall be subject to traffic control signals as provided in this chapter. *At all other places*, pedestrians shall be accorded the privileges and shall be subject to the restrictions stated in this chapter." (emphasis added). As the D.C. Superior Court noted, this provision "appears plainly to state" that the restrictions and privileges in the chapter apply to places "other" than those controlled by pedestrian crosswalk signals. *See Aguehounde,* slip-op at *51.

Given the language of § 2300.1, as well as the local court's interpretation of its own municipal regulations, the Court concludes that § 2303.2 does not apply in the instant case. The parties agree that the crosswalk at which the plaintiff stopped prior to the accident was regulated by a pedestrian walk signal. Statement of Material Facts, ¶ 11. Consequently, the plaintiff is correct that this regulation, 18 DCMR § 2303.2, is not applicable and therefore not relevant in this case.

Nonetheless, the defendant argues in its brief that it seeks to question the plaintiff and witnesses regarding their "knowledge" of this regulation because "evidence of an individual's lack of knowledge or appreciation for the law is clearly relevant to the court or a jury's determination of Plaintiff's failure to exercise reasonable care and compliance with that law." Def.'s Opp'n Pl.'s Omnibus Mot. Limine, ECF No. 41, at 2. It is irrelevant, however, whether witnesses are knowledgeable about a regulation without applicability to the facts at issue.[13]

---

[13] At oral argument, the Court stated that if the defendant were allowed to question witnesses regarding their knowledge of 18 DCMR § 2303.2, the Court anticipates instructing the jury that the regulation was not applicable to the plaintiff's conduct. The defendant then represented that it would not seek to question witnesses regarding the regulation. Thus, this motion may be moot.

Accordingly, the plaintiff's motion *in limine* to preclude reference to 18 DCMR § 2303.2 is granted.

### B. Plaintiff's Motion to Preclude Evidence of the Occupations of Ms. Mahnke's Parents

The plaintiff has moved to preclude mention of the fact that the plaintiff's parents are psychologists, arguing that this information is "not relevant for any purpose" and is inadmissible under FED. R. EVID. 403 because any probative value of this employment information is substantially outweighed by its prejudicial effect.  Pl.'s Omnibus Mot. Limine, ECF No. 37, at 3. The plaintiff is unclear about what prejudice would result from reference to the plaintiff's parents' professions.

The defendant opposes the plaintiff's motion primarily because it does not know what plaintiff's parents will say during their testimony and it does not want to be prevented from mentioning that plaintiff's parents are psychologists.  According to the defendant, questioning the plaintiff's parents regarding their "observations, assessments of and/or treatment of plaintiff's injuries" is both relevant and proper.  Def.'s Opp'n Pl.'s Omnibus Mot. Limine, ECF No. 41, at 3.  Specifically, the defendant argues that "there is an obvious nexus between Plaintiff's parents' observations of and interactions with the Plaintiff as trained psychologists and the injuries sustained by the Plaintiff."  *Id.*  The plaintiff's parents are not proffering expert testimony, however, regarding the medical and mental condition of their daughter.  Nevertheless, their observations of the plaintiff and her cognitive abilities are indeed relevant to this case.  The parent's professional backgrounds may be helpful to the jury in evaluating the weight to ascribe to their observations.  Consequently, the Court denies the plaintiff's motion.

### C.  Plaintiff's Motion to Preclude Evidence Concerning Eyewitness Gabriela Salazar's "Habit" When Crossing An Intersection

Both parties have stated an intention to call as a witness Gabriela Salazar, who was an eyewitness to the accident and was standing to the plaintiff's left on the sidewalk immediately prior to the accident.  Joint Pretrial Statement, ECF No. 38, at 8, 17.  The plaintiff seeks to preclude as irrelevant any testimony from Ms. Salazar about her "habit and/or prudence when approaching an intersection."  Pl.'s Omnibus Mot. Limine, ECF No. 37, at 4.  Specifically, the plaintiff argues that Ms. Salazar should be prevented from "offering testimony that goes beyond what she observed at the time Ms. Mahnke was injured" and should not be allowed to comment that she typically looks both ways before crossing the street.  *Id.*  The defendant counters, in reliance on Federal Rule of Evidence 406, that any comment Ms. Salazar may make regarding her actions on that day should be "admissible evidence on the issues of the exercise of reasonable care, where the bus was at the time Ms. Salazar stepped out and back, and Plaintiff's contributory negligence."  Def.'s Opp'n Pl.'s Omnibus Mot. Limine, ECF No. 41, at 3-4.

Rule 406 permits admission of evidence of a person's habit to prove that the person acted in accordance with that habit on a particular occasion.  FED. R. EVID. 406. By its terms, this rule applies whether the habit testimony elicited is about the actions of a party to the litigation or about a fact witness.  *Id.* (stating that "[e]vidence of the habit of *a person* . . . is relevant to prove that the conduct of *the person*") (emphasis added).

A habit "refers to the type of nonvolitional activity that occurs with invariable regularity." *Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C. Cir. 1989). It is considered to be probative because it is nonvolitional; it has "a reflexive, almost instinctive quality." *Id.*; *see also United States v. Sampol*, 636 F.2d 621, 656 n.21 (D.C. Cir. 1980) ("It is the 'semi-automatic' character of the behavior which renders habit evidence trustworthy."); *Babcock v. General*

26

*Motors Corp.*, 299 F.3d 60, 66 (1st Cir. 2002) (evidence that decedent "always wore his seat belt, regardless of whether he was the driver or a passenger and regardless of the length of the trip" was properly admitted as habit evidence to prove the decedent was wearing a seatbelt at the time of the accident in question); *Cf. United States ex rel. El-Amin v. George Washington Univ.*, No. 95-cv-2000, 2000 U.S. Dist. LEXIS 22937 (D.D.C. Sept. 13, 2000) (relators failed to establish the existence of habit or routine practice when they indicated acts were "sometimes" or "usually" done on some days).

At oral argument, defense counsel represented that no testimony regarding Ms. Salazar's habit of looking before crossing a street would be specifically elicited but that the witness may volunteer such testimony as she did during her deposition.  Thus, this issue may be moot since Ms. Salazar may make no reference to her habitual actions before crossing a street.  Should Ms. Salazar testify, however, that she looked to her left before crossing the street in accordance with her habit of doing so, this testimony would be admissible under Rule 406, and provide relevant context and explanation for her actions just before the accident, in a manner that is not so unfairly prejudicial as to outweigh its probative value.

## V.    THE DEFENDANT'S MOTIONS IN LIMINE

The defendant has filed multiple motions *in limine*, seeking to exclude at trial (1) the findings and opinions of Detective Michael Miller of the D.C. Metropolitan Police Department Major Crash Investigation Unit;  as well as evidence or comment (2) that the WMATA bus operator entered the intersection of Florida Avenue, N.W. and Connecticut Avenue, N.W. on a red traffic signal; (3) regarding the driving record of the WMATA bus operator; (4) that WMATA bus operators' Standard Operating Procedures establish the standard of care governing the issue of negligence; (5) regarding an internal WMATA investigation of the accident,

disciplinary proceedings and actions, and related arbitration proceedings against the bus driver;

and (6) regarding any "worst case scenario" of the plaintiff's future medical care needs and costs.

These motions are addressed individually below.

### A. The Defendant's Motion to Exclude the Findings and Opinions of Detective Michael Miller

The defendant seeks to preclude the plaintiff from discussing the findings and opinions of

Detective Michael Miller, a detective in the Major Crash Investigation Unit of the Metropolitan

Police Department.  As part of a criminal investigation into the accident and the actions of

WMATA bus driver Carla Proctor, Detective Miller issued a report containing his findings and

opinions regarding the circumstances of the accident.  The plaintiff intends to call Detective

Miller as a non-retained expert to testify about his conclusions.

The defendant argues that Detective Miller's report and his findings should be excluded

at trial because (1) Detective Miller's report was not released to the defendant's until April 2011

and the plaintiff did not supplement her expert disclosures to include Detective Miller's report;

(2) Detective Miller's testimony will be redundant and confusing given the testimony of

plaintiff's expert David Stopper; (3) the detective has no basis for his opinions, and therefore the

probative value of his statements is substantially outweighed by the risk of prejudice, in violation

of Federal Rule of Evidence 403; and (4) the report includes findings that the WMATA bus

driver failed to stop at three prior red traffic signals, which are inadmissible under Federal Rule

of Evidence 404(b) as prior bad acts.

First, the defendant's procedural argument as to the inadmissibility of Detective Miller's

report is unconvincing.  The defendant complains that the plaintiff did not file "a supplemental

Rule 26(a)(2)(C) expert witness disclosure incident to the release of Detective Miller's report

that formally notified Defendant WMATA that Plaintiff was actually calling Detective Miller as

an expert witness regarding his criminal investigation report."  Def.'s Mem. Supp. Omnibus Mot.

Limine, ECF No. 39, at 2.  Due to this procedural failure, the defendant further complains that

"Detective Miller, therefore, was not deposed." *Id.*

The defendant's suggestion of procedural unfairness because it was not forewarned of

Detective Miller's testimony is disingenuous.  The defendant was well-aware of Detective

Miller's investigation and accident reconstruction report.  Both parties listed Detective Miller as

a potential witness in their initial disclosures, pursuant to FED. R. CIV. P. 26(a)(1), in April 2010.

Def.'s Rule 26(a)(1) Statement dated Apr. 27, 2010, ECF No. 13, at 2.  Indeed, the defendant

twice asked the Court to stay discovery in this case pending completion of Detective Miller's

investigation, and the defendant specifically kept the Court apprised of Detective Miller's

availability to testify.  Joint Status Report dated Mar. 1, 2011, ECF No. 23 ("At the last status

conference before this Court, defense counsel related information to the court that had been

received from District of Columbia Metropolitan Police Department Det. Michael Miller, the

lead detective investigating the accident.  At that time, Det. Miller anticipated that the

government would have a decision on whether to proceed to an indictment by the 3rd or 4th

week of February. Defense counsel has since learned from Det. Miller that a decision on whether

to pursue criminal charges is now anticipated by mid March, 2011."); Def.'s Mot. Stay Pending

Completion of Criminal Investigation dated Mar. 24, 2010, ECF No. 8; Def.'s Second Motion to

Stay Pending Completion of Criminal Investigation dated Oct. 15, 2010, ECF No. 17.  Moreover,

contrary to the defendant's representation that the Detective "was not deposed," Def.'s Mem.

Supp. Omnibus Mot. Limine, ECF No. 39, at 2, the defendant in fact deposed Detective Miller

on April 15, 2011, following release of his investigative file, and even called him to testify as a

witness on April 11, 2011 in arbitration proceedings against Carla Proctor, the WMATA bus driver who operated the bus that struck the plaintiff.

The plaintiff does not dispute that she did not file a supplemental disclosure for Detective Miller in conformity with FED. R. CIV. P.  26(a)(2)(C), which came into effect on December 1, 2010, after the filing of the plaintiff's initial disclosures.  This recent amendment to the discovery rules requires a party to disclose the subject matter and summary of facts and opinions to which an expert witness, who is not otherwise required to provide a written report, is expected to testify.  FED. R. CIV. P.  26(a)(2)(C).  Although this amended rule became effective before the close of discovery in this case on September 1, 2011, the defendant can show absolutely no prejudice from the plaintiff's failure to supplement her disclosures regarding Detective Miller's expected expert testimony because his report was made known almost simultaneously to both parties.  With the exception of filing a supplemental disclosure, the plaintiff has been diligent in informing the defendant of its intention to call Detective Miller.  The plaintiff listed Detective Miller as the first non-retained expert in her preliminary expert witness disclosures on July 16, 2010; and, as evidenced by the parties' status reports and motions, throughout the discovery process the plaintiff has conferred with the defendant regarding Detective Miller's investigation and report.  *See e.g.* Status Report dated Oct. 18, 2010, ECF No. 19; Status Report dated Mar. 1, 2011, ECF No. 23.  With regard to the potential prejudice to the defendant, as explained above, since the beginning of this case the defendant was aware of Detective Miller's investigation.  The defendant was provided with Detective Miller's report as soon as it was released, which was "well over 6 months prior to trial and four months prior to the deadline of Defendant's expert witness disclosures."  Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, at 3 n.2. Moreover, defendant's accident reconstruction expert David Plant expressly considers and rebuts

Detective Miller's findings in his own report.  Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, Ex. G, David Plant Report dated July 22, 2011.  The procedural lapse cited by the defendant is wholly insufficient to bar admission of Det. Miller's expert testimony under these circumstances.

Second, the defendant argues that Detective Miller's testimony should not be admitted because the plaintiff has also listed David Stopper as its expert accident reconstruction witness, and two witnesses on this topic will be "cumulative, redundant, and prejudicial."  Def.'s Mem. Supp. Omnibus Mot. Limine, ECF No. 39, at 2-3.  The plaintiff counters that "Mr. Stopper will be testifying concerning the standards of care applicable to commercial drivers and Carla Proctor's reckless and grossly negligent violation of the safety standards.  Mr. Stopper will not be proffered nor testifying as an accident reconstructionist."  Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, at 6.  Given that Detective Miller "will be the only witness providing testimony concerning accident reconstruction," *id.*, Detective Miller's testimony will not be cumulative or redundant and will not be barred on this ground.

Third, the defendant argues that there is "no basis" for Detective Miller's conclusion that the WMATA bus ran red lights prior to entering the intersection at which the accident occurred, and further that the Court should therefore preclude this evidence on the basis that its probative value is outweighed by the risk of prejudice.  To the extent that the defendant argues that Detective Miller's testimony and report is unreliable, the Court takes note that the defendant itself called Detective Miller as a witness in arbitration proceedings against its former employee Carla Proctor, and relied on his testimony concerning the sequence of traffic signals in the intersections traversed by the bus prior to the accident.  Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, Ex. A, Transcript of Arbitration Proceedings *In re Carla Proctor* (Apr. 11,

2011).  At that arbitration proceeding, Detective Miller testified that he has over nineteen years

of experience in the Major Crash Investigation Unit of the Metropolitan Police Department, and

the defendant proffered Detective Miller as its expert on accident reconstruction.  *Id.* at 261-62.

The defendant's 'about-face' contention in this Court that Detective Miller's report and

conclusions are unreliable, when it previously urged an arbitration panel to rely on this

investigatory results, is without merit.

Finally, the defendant argues that Detective Miller's conclusion that the WMATA bus

ran three red lights prior to the accident is inadmissible on grounds that this conclusion is

"irrelevant," prejudicial, and barred under Federal Rule of Evidence 404(b).  Def.'s Mem. Supp.

Omnibus Mot. Limine, ECF No. 39, at 7-8.  Specifically, the defendant argues that "opinion

evidence that the bus operator failed to obey traffic signals before the accident location is not

admissible to show that the bus operator failed to obey the traffic signals at the intersection of

Florida Avenue, N.W. and Connecticut Avenue, N.W. at the time of the occurrence." *Id.* at 5.[14]

The plaintiff counters that the WMATA bus driver's conduct at prior intersections "are

extremely close" to the intersection at which the accident occurred, and, according to Detective

Miller, the WMATA bus travelled through all of these intersections "in less than fifteen

seconds."  Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, at 10.

Detective Miller concluded in his report that the WMATA bus ran red lights at three

intersections: Florida Avenue and Phelps Place; Florida Avenue and S Street; and Florida

Avenue and Connecticut Avenue.  Miller Report, at 5-7.  The traffic lights at these intersections

---

[14] The defendant does not contend that Detective Miller's report is inadmissible hearsay.  Detective Miller's report is excluded from the hearsay rule under FED. R. EVID. 803(8)(C), which states that in "civil actions . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." *See also Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 170 (1988) (" . . . that portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion.").

are sequenced so that they are "all tied into one traffic light timing phase."  Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, Ex. A, Transcript of Arbitration Proceedings *In re Carla Proctor* (Apr. 11, 2011), at 280.  It appears from the record that when the traffic signal at Florida Avenue and Phelps Place turned red, the light at Florida Avenue and S Street turned yellow.  *Id.* at 296-97.  Thus, if the WMATA bus driver ran a red light – or even proceeded through an intersection on a yellow light – a jury may conclude that the WMATA bus driver should have seen or anticipated that the next traffic light would soon turn red, and therefore should have been prepared to stop.  Indeed, the defendant itself made this argument in its arbitration proceedings against Ms. Proctor, relying extensively on the fact that Ms. Proctor was aware of the sequenced timing of the lights and should have been prepared to stop at the intersection at which the accident occurred given that the two preceding lights were yellow.  Pl.'s Opp'n Def.'s Suppl. Mem. Supp. Def.'s Omnibus Mot. Limine, ECF No. 44, Ex. B., WMATA Post-Hearing Brief in Arbitration Proceedings Against Carla Proctor dated Feb. 4, 2011, at 20-23.

Generally, Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  In this case, however, Rule 404(b) does not apply.  The WMATA bus driver's conduct at the intersections immediately preceding the intersection of Florida and Connecticut Avenues are not prior bad acts, but are rather part of a continuous series of events, which are probative of and relevant to the reasonableness of the bus driver's conduct when entering the intersection at which the accident occurred.[15]  Accordingly, given the close proximity of the

---

[15] The defendant's argument before this Court that Ms. Proctor's actions at the two prior intersections is "irrelevant" to this case is entirely disingenuous given that the defendant elicited testimony on the sequence and timing of the

intersections, and the fact that the timing of the traffic signals are sequenced, the WMATA bus driver's actions at the preceding intersections are intertwined with and relevant to the facts and circumstances of her actions at the intersection at which the accident occurred. *See* Weinstein's Federal Evidence, § 404.12[3] ("If 'other crimes, wrongs, or acts' evidence constitutes direct evidence relevant to the pending matter, Rule 404(b) does not prevent admission of the evidence. Such acts are *intrinsic* to the charged crime and do not fall under Rule 404(b)'s limits on the use of 'other crimes, wrongs, or acts.'") (emphasis in original); *see also United States v. Akhigbe*, No. 09-cr-151, 2009 U.S. Dist. LEXIS 131082, at *4 (D.D.C. Dec. 2, 2009) ("[W]here testimony is admitted as to acts intrinsic to the crime charged, and is not admitted solely to demonstrate bad character, it is admissible. Evidence of uncharged conduct is not considered evidence of other crimes where it is necessary to complete the story of the crime on trial. Such evidence is not considered to fall under Rule 404(b) because it is offered as direct evidence of the crime charged.") (internal quotations and citations omitted).

In sum, the defendant was well aware of Detective Miller's report and potential testimony and on notice of the plaintiff's intention to call him as an expert witness in a timely fashion and in accordance with applicable discovery rules and the scheduling order of this Court. The defendant's motion to preclude Detective Miller's testimony and report is denied since his testimony will not be redundant and is relevant.

---

traffic lights not only at the intersection at which the accident occurred, but also at the two preceding intersections to show that "based on [Ms. Proctor's] professional experience operating a bus at this intersection, she had enough information to know that when entering it when she did, she would not successfully clear the intersection including the crosswalk." Pl.'s Opp'n Def.'s Suppl. Mem. Supp. Def.'s Omnibus Mot. Limine, ECF No. 44, Ex. B., WMATA Post-Hearing Brief in Arbitration Proceedings Against Carla Proctor dated Feb. 4, 2011, at 22.

**B. The Defendant's Motion to Exclude Evidence that the WMATA Bus Entered the Intersection of Florida Avenue, N.W. and Connecticut Avenue, N.W. on a Red Traffic Signal.**

The defendant argues that the plaintiff should be precluded from arguing that the WMATA bus entered the intersection at which the accident occurred on a red traffic signal because there is "no evidence" to that effect.  Def.'s Omnibus Mot. Limine, ECF No. 39, at 5. The defendant's motion is denied.  There is evidence in the record from Detective Miller's report to support the conclusion that the WMATA bus ran red lights at intersections.  Miller Report, at 5-7.  To the extent that the defendant believes that Detective Miller does not have a good faith basis for his findings and opinions, it may question Detective Miller on that point and make its arguments before a jury.  The defendant's motion to preclude this argument is denied.

**C. The Defendant's Motion to Preclude Evidence Related to the Driving Record of WMATA Bus Driver Carla Proctor**

The defendant moves to exclude "any evidence, comment and/or argument about the bus driver's driving record [because it] is not relevant to the issue of her alleged negligence at the time of the occurrence."  Def.'s Omnibus Mot. Limine, ECF No. 39, at 6.  The plaintiff states that she "does not intend to introduce any such evidence, unless the Defendant, or Ms. Proctor, opens the door to the relevancy of such evidence."  Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, at 10.  The defendant's motion is therefore granted as conceded.  If at trial the plaintiff argues that the defendant has "opened the door" to such evidence, the Court will address that matter when raised by the parties.

**D. The Defendant's Motion to Preclude Evidence and Comment that WMATA's Standard Operating Procedures Establish the Standard of Care Governing the Issue of Negligence**

The defendant argues that the plaintiff should be not be able to comment or present evidence that WMATA's Standard Operating Procedures ("SOPs") constitute the applicable

35

standard of care.  Def.'s Omnibus Mot. Limine, ECF No. 39, at 6-8.  Relying on *Briggs v. Washington Metropolitan Area Transit Authority*, 481 F.3d 839, 848 (D.C. Cir. 2007), the defendant states that violations of WMATA SOPs do not, standing alone, establish a breach of duty of care.  Furthermore, the defendant argues that "[p]laintiff's expert accident reconstructionist has not identified any of WMATA's internal guidelines as constituting a national standard of care in the transportation industry and Plaintiff has not sued the Defendant on the basis of the bus operator's alleged breach of a national standard of care. Without expert testimony, WMATA's SOPs are inadmissible."  Def.'s Omnibus Mot. Limine, ECF No. 39, at 7.

In *Briggs*, the D.C. Circuit stated "[w]hile internal regulations may be admissible as *bearing on the* standard of care, admission at trial of the WMATA manuals alone would be insufficient, because expert testimony would still be required to establish that the manuals embody the national standard of care and not a higher, more demanding one."  481 F.3d at 848 (internal quotations and alterations omitted) (emphasis in original).

The plaintiff states that, as required by *Briggs*, she will present expert David Stopper to discussion the standards of care applicable to commercial drivers, who will testify that WMATA SOPs "embody the national standard of care and do not constitute a higher standard of care." Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, at 10-11.  Moreover, the defendant specifically discussed its SOPs with Mr. Stopper at his deposition and Mr. Stopper will speak to those issues at trial.  Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, Ex. J, Dep. of David Stopper, at 12-22.   Accordingly, the defendant's motion to preclude discussion of its SOPs is denied.  If, in accordance with *Briggs*, Mr. Stopper fails to provide the proper foundation for his testimony regarding WMATA SOPs, the Court will consider, if requested, striking those portions of his testimony.

**E.  The Defendant's Motion to Preclude Evidence and Comment of Any WMATA Internal Investigation, and Disciplinary and Arbitration Proceedings**

The defendant seeks to prevent the plaintiff from introducing evidence or commenting on the "conduct and results" of WMATA's internal investigation, including WMATA's Final Investigation Report which is plaintiff's proposed exhibit 44, as well as disciplinary and arbitration proceedings regarding Carla Proctor, the WMATA bus driver, and her termination. Def.'s Omnibus Mot. Limine, ECF No. 39, at 8-10.  The defendant argues that its internal disciplinary proceedings are "quick" and "summary" and only determine whether an employee violated standard operating procedure, which does not establish breach of a duty of reasonable care negligence.  *Id.*  The defendant also argues that its internal investigation and disciplinary proceedings, as well as the disciplinary actions taken, are governed by the self-evaluative privilege,[16] and introduction of such internal investigatory steps in litigation arising from the same facts under investigation would "chill WMATA from conducting post-accident investigations based on its internal, more rigorous standards for fear that the results could be later used to expose itself to liability in civil proceedings."  *Id.* at 9.

The plaintiff responds that the defendant should be prohibited from relying on any privilege because shortly after the accident the defendant "made the conscious decision to advise the public of the fact that Ms. Proctor was terminated" in a press release, which stated that Ms.

---

[16] "Self-evaluative privilege generally applies to a critique submitted as part of a mandatory government report, and prepared retrospectively as a component of a post-accident evaluation." *Wainwright v. Washington Metro. Area Transit Auth.*, 163 F.R.D. 391, 396 (D.D.C. 1995) (citing *Bredice v. Doctors Hospital*, 50 F.R.D. 249, 251 (D.D.C. 1970)) (additional citations omitted). The purpose of the privilege is to encourage "confidential self-analysis and self-criticism." *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 467 (D.C. Cir. 1994).  Courts are "reluctant to expand [the privilege] beyond cases involving public health or safety."  *Wade v. Washington Metro. Area Transit Auth.*, No. 01-cv-334, 2006 WL 890679, at *5 (D.D.C. 2006) (citing *First Eastern Corp.*, 21 F.3d at 467 n.1). Although "[t]he self-evaluative privilege is rarely recognized," *id.* (citing *FTC v. TRW, Inc.*, 628 F.2d 207, 210 (D. C. Cir. 1980) ("[C]ourts have appeared reluctant to enforce even a qualified 'self-evaluative' privilege.")), the privilege has been held "applicable to WMATA safety evaluations."  *Wainwright v. Washington Metro. Area Transit Auth.*, 163 F.R.D. 391, 396 (D.D.C. 1995) (citing *Gilbert v. Washington Metro. Area Transit Auth.*, No. 85-535 (D.C. Cir. Sept. 3, 1986) (unpublished decision)).  The Court does not need to address the scope or applicability of this privilege since this motion will be decided pursuant to Rule 407 of the Federal Rules of Evidence.

Proctor "was dismissed for failing to follow standard operating procedure." Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, at 12; Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, Ex. L, WMATA Press Release dated Sept. 24, 2009.  The plaintiff argues that the defendant made a public admission regarding its investigation, and "cannot now contend that Plaintiff should be prohibited from introducing it as evidence."  Pl.'s Opp'n WMATA Omnibus Mot. Limine, ECF No. 40, at 13.  Moreover, the plaintiff states that if the defendant seeks to take a position contrary to the one it took in its 2009 press release and during internal arbitration proceedings, the defendant "opens the door to its own prior statements and internal investigations" and the plaintiff should be allowed to use the defendant's prior statements for impeachment purposes.  *Id.*

At the Pre-Trial Conference, the Court heard argument on the parties' positions regarding this motion and authorized them to file supplemental briefs on whether the defendant had waived any privilege that may apply due to its public comments regarding Ms. Proctor's termination.  In its supplemental filing, the defendant argued for the first time that evidence regarding its investigation, internal disciplinary proceedings, and its disciplinary action against the bus driver should be inadmissible under Federal Rule of Evidence 407, which states, in relevant part, that "evidence of the subsequent [remedial] measures is not admissible to prove negligence, culpable conduct."  FED. R. EVID. 407.  The plaintiff requested additional time to file an opposition to the defendant's newly raised Rule 407 argument, which the Court granted.  Pl.'s Opp'n to Def.'s Suppl. Mem. Supp. Def.'s Omnibus Mot. Limine, ECF No. 44, at 3; Minute Order dated Oct. 18, 2011 (Howell, J.).  Following review of the parties' additional briefs on this issue, the Court concludes that Federal Rule of Evidence 407 applies to evidence of WMATA's internal investigation and disciplinary proceedings, and the termination of the bus driver.

38

The grounds for exclusion of evidence of subsequent remedial measures under Federal Rule of Evidence rests in large part "on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Advisory Committee's Notes, FED. R. CIV. P. 407. As the Advisory Committee explains, "courts have applied this principle to exclude evidence of . . . changes in company rules, and discharge of employees, and the language of the present rule is broad enough to encompass all of them." *Id.* Thus, pursuant to Rule 407, courts have excluded "evidence that an employer subsequently discharged an employee accused of causing a plaintiff's injury." *Nolan v. Memphis City Schools*, 589 F.3d 257, 274 (6th Cir. 2009); *Jumper v. Yellow Corp.*, 176 F.R.D. 282, 285 (N.D. Ill. 1997) (same); *Wanke v. Lynn's Transp. Co.*, 836 F. Supp. 587, 595 (N.D. Ind. 1993) (same).

The plaintiff concedes "that under most circumstances the fact that WMATA terminated Ms. Proctor would be inadmissible as a subsequent remedial measure under Federal Rule of Evidence 407." Pl.'s Suppl. Mem. Regarding Fed. R. Evid. 407, ECF No. 45, at 1. The plaintiff contends, however, that after "terminating Ms. Proctor, Defendant WMATA made the decision as a governmental agency to file a Press Release." *Id.* According to the plaintiff, the defendant's issuance of a press release containing an express public admission about the conclusions of the investigation and termination of the employee push these events outside of the protection of Rule 407.

The press release issued by the defendant does not alter the salient fact that the Final Report of the internal investigation, the discipline proceeding before the panel of arbitrators, and the termination of the bus driver were all steps taken internally by the defendant in response to the accident. Other courts confronting similar facts have concluded that Rule 407 applies to bar admissibility of remedial measures, even when these measures have been publicly touted. For

example, in *Specht v. Jensen*, 863 F.2d 700 (10th Cir. 1988), the Tenth Circuit affirmed the

district court's exclusion of a press release that "summarize[d] the results of the City's

investigation of the incidents giving rise to the lawsuit . . . [and] state[d] that the officers

involved [in the civil rights case] exercised poor judgment . . . and that appropriate disciplinary

action would be taken." *Id.* at 701.  The Tenth Circuit reasoned that the press release fell within

the ambit of Federal Rule of Evidence 407 because "[t]he release thus sets out remedial measures

taken by the City to prevent the recurrence of the poor judgment the investigation revealed." *Id.*

In this case, the defendant similarly stated in its press release that it was taking remedial steps in

response to the accident by terminating Ms. Proctor from her employment because she had

violated WMATA's standard operating procedures.  This press release, along with WMATA's

internal investigation and arbitration proceedings, are within the purview of Federal Rule of

Evidence 407 and are thus inadmissible to prove negligence and culpable conduct.  *See also*

*Reynolds v. Univ. of Pennsylvania*, No. 06-1237, 2010 WL 2253732, at *5 (E.D. Pa. 2010)

(excluding statements made at a town hall meeting pursuant to FED. R. EVID. 407).  The

defendant's  motion to exclude evidence and comment of its Final Report, internal disciplinary

proceedings,  labor-union arbitration proceedings, and termination of the bus driver is granted.

The Court cautions, however, that Rule 407 "does not require the exclusion of evidence

of subsequent measures when offered for another purpose, such as . . . impeachment." FED. R.

EVID. 407.  The purpose of Rule 407 is to encourage remedial measures, but it is not to be used

by a party to disavow its own findings or take positions inconsistent with its past representations.

*See Cunningham v. D.C. Sports & Entm't Comm'n*, No. 03-cv-839, 2005 U.S. Dist. LEXIS

29698, at *19-20 (D.D.C. Nov. 29, 2005) (defendants' motion *in limine* to exclude references to

remedial measures denied because "it is deemed fundamentally unfair for a defendant to insist

that the danger was so obvious that plaintiff had to know of it and understand its full scope and magnitude and then deny plaintiff the right to show that, after the accident, the defendant took measures that gave others the warning that the defendant claimed was completely unnecessary."); *Pinard v. Safeway Stores, Inc.*, No. 90-cv-3066, 1991 U.S. Dist. LEXIS 12552, at *7 (D.D.C. Sept. 10, 1991) (defendant's motion *in limine* to exclude evidence of subsequent remedial measures denied since such evidence would be admissible for "proving ownership, control, or feasibility of precautionary measures" and the defendant "intends to argue at trial that it took all reasonable precautionary measures."). Thus, if at trial, a defense witness asserts a position in conflict with statements made by the defendant in its press release, or in its internal investigatory and arbitration proceedings, the plaintiff may use that evidence for impeachment purposes.

### F.   The Defendant's Motion to Preclude Evidence and Comment on Future Medical Costs Projected by Dr. Craig Lichtblau, MD, and Dr. Anthony Gamboa, PhD.

The defendant has moved to preclude reference of the future medical costs projected by plaintiff's experts Craig Lichtblau, M.D., a physiatrist, and Anthony Gamboa, Ph.D., a vocational economist. According to the defendant, Dr. Lichtblau's projection of a "worst case scenario" for medical costs was not provided to the defendant prior to Dr. Lichtblau's deposition and "is wholly without support in the record" because no treating or expert neurosurgeon or neurologist has provided any opinion that plaintiff will need that level of care. Def.'s Omnibus Mot. Limine, ECF No. 39, at 10-11. Moreover, the defendant asserts that Dr. Gamboa's cost projections relied on Dr. Lichtblau's conclusions and should therefore be excluded. *Id.* at 11. The plaintiff responds that if the defendant seeks to challenge Dr. Lichtblau's qualifications and the reliability of his projections, it should have requested a *Daubert* hearing. Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, at 18.

Under Rule 702, the court may only admit expert testimony that is relevant and reliable. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993); *see also Harris v. Koenig*, No. 02-cv-618, 2011 WL 2531257, at *1 (D.D.C. June 27, 2011). The court "assumes only a 'limited gate-keep[ing] role' directed at excluding expert testimony that is based upon 'subjective belief' or 'unsupported speculation.'" *Harris*, 2011 WL 2531257, at *1 (quoting *Ambrosini v. Labarraque*, 101 F.3d 129, 135-36 (D.C. Cir. 1996)). In evaluating challenges brought under Rule 702, the court takes a "flexible approach", *id. (citing Daubert,* 509 U.S. at 594), and has "broad discretion in determining whether to admit or exclude expert testimony." *U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.,* 608 F.3d 871, 895 (D.C. Cir. 2010) (internal quotations and citation omitted).

In this case, the defendant has not formally challenged Dr. Lichtblau's qualifications or his expertise. Moreover, the plaintiff states that she will present at trial her expert neurologist, Dr. Michael Batipps, and neurosurgeon, Dr. Kevin McGrail, who will testify that plaintiff's injuries are permanent and will not improve. Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, at 15-17. Dr. McGrail will specifically testify that the plaintiff will need the level of care detailed in Dr. Lichtblau's "worst case scenario." *Id.* at 17 n.5.[17] Dr. Lichtblau's projected worst case scenario therefore appears to have sufficient indices of reliability to be presented to the jury for whatever weight the jury may accord to this potential scenario. The defendant's motion to preclude Dr. Lichtblau and Dr. Gamboa's projections of future medical costs is therefore denied.

---

[17] The defendant does not dispute that the plaintiff provided Dr. Lichtblau's recent projections on May 26, 2011, the same day that the plaintiff received it. Pl.'s Opp'n Def.'s Omnibus Mot. Limine, ECF No. 40, at 16.

## VI.   THE DEFENDANT'S OBJECTIONS TO THE MEDICAL REPORTS AND CIRRICULA VITAE OF PLAINTIFF'S EXPERTS

The defendant has objected to the proposed admission of plaintiff's exhibits 28 through 34, and 36 through 40, which are the medical reports and *curricula vitae* ("CVs") of Anthony Gamboa, Ph.D.; Craig Lichtblau, M.D.; Michael Batipps, M.D.; Joseph Bleiberg, Ph.D.; Kevin McGrail, M.D; and Melissa A. Carswell, Psy.D.  The defendant argues that these documents are hearsay and are thus inadmissible.  Joint Pretrial Statement, ECF No. 38, at 20-21.

Technically, medical reports prepared by experts and the CVs of expert witnesses are hearsay and are not admissible into evidence pursuant to FED. R. EVID. 802. *See Wilson v. Hartford Ins. Co. of the Midwest,* No. 10-993, 2011 WL 2670199, at *2-3 (W.D. Wash. 2011) (granting motion to exclude expert reports as hearsay); *Grand Acadian, Inc. v. United States*, No. 07-849, 2011 WL 4684276 (Fed. Cl. Oct. 6, 2011) ("The court has previously sustained an objection that expert reports are inadmissible hearsay."); *Alexie v. United States,* No. 3:05-cv-002997, 2009 WL 160354 (D. Alaska Jan. 21, 2009) ("Application of the hearsay rule to exclude both parties' experts reports is quite straightforward. The reports are out-of-court statements by witnesses offered for their truth and so fall within the definition of hearsay in FED. R. EVID. 801."); *see generally Presley v. Commercial Moving & Rigging, Inc.*, 25 A.3d 873, 893 (D.C. 2011) ("However, while experts may rely on hearsay to form their opinions, their testimony is not a vehicle by which evidence that is otherwise inadmissible may be introduced. The trial court properly applied this rule because the report upon which the expert relied constituted inadmissible hearsay, and thus we can see no abuse of discretion in the trial court's decision to preclude the admission of the accident report.").  That said, parties may stipulate to admission of

certain reports and CVs.  *See Wilson*, 2011 WL 2670199, at *3 ("The court notes that parties

often, for ease of presentation of evidence, mutually agree that expert reports are admissible.

The court will not, however, force parties to reach such an agreement."); *Alexie,* 2009 WL

160354 at *1 ("[T]he court entertains the hope that at trial the parties will stipulate to the

admission of the c.v.'s. Of course, such a stipulation need not constitute a stipulation that the

expert is in fact qualified to offer expert opinion testimony.").  The parties in this case may

similarly find a mutually agreeable solution; otherwise both the expert reports and CVs are

inadmissible as hearsay.

## VII.   PLAINTIFF'S OBJECTIONS TO WMATA'S EXHIBITS DEPICTING VIDEOTAPE ANALYSIS

The plaintiff has objected to the admission into evidence of the defendant's proposed

exhibit 6, a videotape re-creation of testing done by the D.C. Metropolitan Police Department,

and exhibit 7, a videotape analysis of bus movement and the accident by David Plant.  Joint

Pretrial Statement, ECF No. 38, at 22.  The plaintiff argues that these exhibits are cumulative and

not properly supported by the evidence in this case.  The Court reserves judgment on this

objection pending further clarification of the issues relating to those exhibits during trial.

## VIII.  CONCLUSION

For the foregoing reasons, the Court denies the defendant's motion for summary

judgment and motions *in limine* to exclude at trial (1) the findings and opinions of Detective

Michael Miller of the D.C. Metropolitan Police Department Major Crash Investigation Unit; (2)

evidence or comment that the WMATA bus operator entered the intersection of Florida Avenue,

N.W. and Connecticut Avenue, N.W. on a red traffic signal; (3) evidence or comment that

WMATA bus operators' Standard Operating Procedures establish the standard of care governing

the issue of negligence; and (4) evidence or comment regarding any "worst case scenario" of the

plaintiff's future medical care needs and costs.  The Court grants the defendant's motion *in limine* to exclude evidence or comment of its internal investigations, including its Final Report which is plaintiff's proposed exhibit 44, internal disciplinary proceedings, labor-union arbitration proceedings, and the termination of the bus driver.  The defendant's motion *in limine* to preclude mention of the driving record of Carla Proctor, the WMATA bus operator, is granted as conceded.  The Court denies the plaintiff's motions *in limine* to preclude (1) the defendant from raising a contributory negligence defense; (2) evidence or comment that Ms. Mahnke's parents are psychologists; and (3) evidence concerning eyewitness Gabriela Salazar's "habit" when crossing an intersection.  The Court grants the plaintiff's motions *in limine* to preclude any discussion of D.C. Municipal Regulation 2303.2.   The plaintiff's motion to amend her Complaint in order to increase her *ad damnum* demand for judgment from $10 million to $20 million is granted as conceded.

An Order consistent with this Memorandum Opinion will be entered.

**DATED: OCTOBER 20, 2011**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge